## B. Matheis *v.* William Mazet, Appellant.

*Husband and wife—Action of crim. con.—Damages—Punitive or exemplary damages—Evidence.*

In a crim. con. action it is not improper to charge that the jury may take into consideration the social relation of the parties, the apparent affection that existed between husband and wife, and the actual misconduct of the person who is alleged to be the seducer.

In such a case the husband is entitled to punitive damages and it is not improper to admit evidence that the seducer is a rich man; nor is it improper for the court to say that "there is a very great difference in a penalty as between a rich man and a poor man."

Argued Oct. 26, 1894.   Appeal, No. 145, Oct. T., 1894, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1892, No. 648, on verdict for plaintiff.   Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Trespass to recover damages for alienation of wife's affection and for crim. con.   Before STOWE, P. J.

At the trial the evidence for plaintiff tended to show that defendant seduced plaintiff's wife, and that on Nov. 19, 1892, defendant and plaintiff's wife were discovered together in bed in an assignation house, by a detective employed by plaintiff.   De-

fendant testified that he had been solicited by plaintiff's wife but did not have carnal relations with her.

Plaintiff, under objection and exception, gave evidence to show defendant's financial condition. [5, 6]

The court charged in part as follows:

" In this case the alienation is alleged to be the result of the copulation, and before you can find a verdict for the plaintiff here you must be satisfied that there was actual illicit intercourse commenced—not that they were simply lying in bed together, but that they had actually commenced that which was copulation, even if they were stopped before the whole matter had been accomplished in the natural way. If you believe that then the plaintiff is entitled to your verdict for damages. If you are not satisfied of that under all the testimony, you ought to find a verdict for defendant. But if you do believe it, as I said, the plaintiff is entitled to your verdict, and then the question arises upon what basis you must estimate or calculate those damages.

" [There is no fixed rule, and there cannot be, in compensating a man for a wrong done him by acts of this kind. You cannot measure it by dollars and cents as you would any commodity sold in the market; it has to be determined under all the circumstances by the good judgment of the jury, and they are to take into consideration in that view the social relation of the parties, the apparent affection that existed between the husband and wife, the actual misconduct of the plaintiff who was alleged to be the seducer.] [1]

" I do not think, where a man enters a house under the guise of friendship, and there takes advantage of his position and deliberately seduces a man's wife, that it should be or would be looked upon by a jury in the same way as in a case where a man simply meets a married woman, and she, by insinuations thrown out by her to him, induces him to believe he can have intercourse with her and he does it. I do not think the jury ought to look upon those matters in the same light and find verdicts of damages to the same extent.

" [Nor where a man is poor, although he may be found guilty, should the jury, in that part of their verdict which we call punitive damages, based upon merely penal damages, impose the same amount as they would in a case where the man is well

off. As has been said in a case read to you, there is a very great difference in a penalty as between a rich man and a poor man ; what would be absolutely ruinous to a poor man worth probably a few hundreds or thousands of dollars, would not amount to anything by way of penalty to a man worth hundreds of thousands of dollars.] [2]

" These remarks are only by way of suggestion. I do not mean to insinuate that there is anything in this case to justify the jury in finding a verdict for the plaintiff. That is entirely for you. Nor do I mean to insinuate whether your verdict, if you find for plaintiff, ought to be large or small. That is also for yourselves ; you are to take all these matters, you are to take all the testimony and find as you believe it to be under the evidence and form your verdict in accordance with the wrong done the plaintiff, and also with a view to the acts on the part of the defendant. Did he go there as a seducer ? Did he hunt up this woman ? Did he, with the intent of gratifying his own lust, step into a happy household and break it up? If he did, that is one point of view. Did he meet this woman, and did she commence complaining to him about the conduct of her husband ? Did she seek him out; did she actually invite him to do that which he undertook to do whether he accomplished it or not? If she did, it is not to be treated in the same way as though he had gone there intentionally, a deliberate seducer trying to break up the household of the plaintiff.

" [Now, you are, in a general way, to look at the wounded feelings and affections of the plaintiff ; you are to look at the wrong done to his social and family relations, you are to consider the dishonor brought upon his family. If he is entitled to a verdict, all those matters are to be considered. How much were his feelings wounded? That depends very much upon the relations between him and his wife, and his affections. A man that cared nothing for his wife, treated her unkindly and brutally, cannot be wounded very much as far as affections are concerned by the fact that his wife may make a false step, but notwithstanding that, there may be a serious injury to his social relations ; he may be occupying such a position that the fact that his wife committed this wrong upon him would very much injure his standing among his friends and acquaintances, notwithstanding he may not have been the husband he ought to

have been. And so the dishonor is part of the same idea. The degradation which causes the distress, and the mental anguish which follows, are the real grounds of recovery.] [3]

" [And I may say, in addition to that, that the plaintiff is entitled to recover, if for anything, what we call penal damages, that is, an amount of money outside of that which would actually compensate him, if there is any such thing as compensation, as we call it in law, for his wounded feelings and loss of social position and character. You are entitled to consider what we call damages by way of penalty, an imposition upon him for his misconduct. The idea seems to be to operate as a sort of detriment to others to prevent their doing things of this kind. It is not the policy of the law to confine the recovery of the injured party to mere compensation for the injury done by the loss of his wife's services. An additional amount may be given by way of what is called punitive damages, that is damages in the nature of a penalty for his offense.] " [4]

Verdict and judgment for plaintiff for $3,500.

*Errors assigned* were (1–4) instructions as above, quoting them; (5, 6) rulings on evidence, quoting bills of exceptions.

*F. C. McGirr* and *J. S. Ferguson, John Marron* with them, for appellant, cited: 3 Sutherland, Damages, p. 744; Sherwood v. Titman, 55 Pa. 77; Am. & Eng. Enc. of Law, vol. 9, p. 836; 7 Ib. 448; Ferguson v. Smethers, 70 Ind. 520; Nagle v. Mullison, 34 Pa. 48; Neeb v. Hope, 111 Pa. 145; Cowing v. Cowing & Wollen, 33 L. J. (N. S.) 149; James v. Biddington, 6 C. & P. 589; Wilson v. Leonard, 5 Ir. Jur. (O. S.) Exch. 101; dissenting opinion in Cornelius v. Hambay, 150 Pa. 359; 2 Sedgwick, Damages, pp. 517, 518.

*Charles A. Sullivan, Joseph Stadtfeld* with him, for appellee, cited: McAlmont v. McClelland, 14 S. & R. 361; 7 Am. & Eng. Enc. of Law, 448; 2 Greenl. Ev., 10th ed. 254; Bennett v. Hyde, 6 Conn. 24; Shute v. Barrett, 7 Pick. 86; Grabe v. Margrave, 3 Scam. 327; Reed v. Davis, 4 Pick. 216; McNamara v. King, 2 Gilm. 432; Larned v. Buffington, 3 Mass. 546.

OPINION BY MR. CHIEF JUSTICE STERRETT, Nov. 5, 1894:
The first four specifications of error, based on the quotations

from the learned trial judge's charge recited therein respectively, can be best considered together in connection with the entire charge. It often happens that excerpta from a charge,—severed as they necessarily must be from other parts thereof and thus presented alone,—may be subject to adverse criticism which is entirely obviated by considering the charge as a whole. To some extent, this is so in the present case.

The facts, which the testimony tended strongly to prove, were of course for the exclusive determination of the jury : and, in view of the overwhelming weight of the evidence, the fact that they were determined in favor of the plaintiff could not be surprising to any one,—not even to the defendant himself. In the light of the testimony, we have considered the entire charge, in all its bearings, and are satisfied that it is neither an unfair nor an erroneous presentation of the law applicable to the practically undisputed facts of the case. Explained and qualified as they are in other portions of the charge, there is nothing, in either of the quotations embodied in the specifications of error, of which the defendant had any just reason to complain.

Assuming the facts to be substantially as claimed by plaintiff, and as the jury must have found them, he was clearly entitled to recover damages, personal to himself, resulting from the acts complained of,—not merely a part, but the whole of such resultant damages. Hence it was strictly proper for the learned judge to call the jury's attention,—as he did in that part of the charge complained of in the first specification,—to the several ways in which the plaintiff could, and presumably did suffer personal damages : and it thus became the duty of the jury to determine for themselves, from all the evidence, whether he did thus suffer from defendant's wrongful acts, and if so, to what extent.

What was said, in that part of the charge recited in the second specification, was fully warranted by McAlmont v. McClelland, 14 S. & R. 361, wherein Mr. Justice DUNCAN said : " This inquiry into the condition of the defendant has constantly been made, and has always been applied to those cases where damages are designed, not only as a satisfaction for the injury, but as a terror to others, and as a proof of the detestation of juries. In cases of crim. con., actions for debauching a man's daughter, ..·.. actions for malicious prosecution, slander and other ac-

tions of the same species, where the damages are not matters of calculation by dollars and cents, but where each must depend on its own particular circumstances of aggravation, and the condition in life of the parties, courts (unless the damages are outrageous) never set aside the verdict on account of the damages, but always take into view the situation of the parties as to property; and this they can only know from the evidence. . . . Damages are given by way of example; that which would be exemplary, as to one, would not make another feel—would be no terror to him."

Properly construed, and as the jury doubtless understood the language employed, there is no error in that part of the charge quoted in the third specification. In saying to the jury : " You are to look at the wrong done to his social and family relations; you are to consider the dishonor brought upon his family," etc., the learned judge referred solely to the personal sufferings and losses of the plaintiff, and not to the sufferings and losses of the family as contradistinguished from those of the plaintiff himself. When dishonor was brought upon the family, he, of course, as its head, suffered thereby personally. When read in connection with the context, and other parts of the charge, the meaning of the court cannot be mistaken.

The doctrine of punitive or exemplary damages, as applicable to such cases as this, is as old as the commonwealth itself; and it will be an evil day to the cause of justice and good morals, if the principle upon which such damages have hitherto been sustained should be abandoned. On principle as well as authority, the learned judge was substantially correct in employing the language recited in the fourth specification : Cornelius v. Hambay, 150 Pa. 359.

As presented to us, the fifth and sixth specifications were not according to rule; but, by leave of court, they were amended, and may now be disposed of by saying that there appears to be no good reason for sustaining either of them. From what has already been said the evidence referred to in each was competent, and therefore rightly received.

Judgment affirmed.