# Wirsing *v.* Smith, Appellant.

*Evidence—Exclusion of evidence—Relevancy—Collateral matters.*

Testimony relating to collateral matters not connected with the parties to the action, and without any relevancy to the issue is properly excluded.

*Assault—Civil action for damages for assault—Evidence—Record of conviction—Cross-examination.*

On the trial of a civil action to recover damages for personal injuries caused by assault and battery, where the defendant offers in evidence the record of his conviction of the crime and also testifies that he was serving a term in prison as a result of such conviction, and he offers this evidence in mitigation of punitive damages, the plaintiff may on cross-examination develop all the facts shown by the record, or by the testimony of defendant at the time the sentence was imposed.

*Assault—Civil action—Punitive damages—Record of conviction.*

On the trial of a civil action to recover damages for personal injuries resulting from an assault, punitive damages may be recovered if the facts warrant their imposition, and this even in a case where there has been a conviction of a criminal offense. In such cases the rule is that the record showing conviction and sentence may be offered in evidence, and considered by the jury in mitigation of exemplary damages.

*Practice, C. P.—New trial—Excessive verdict.*

As a rule, whether a new trial be granted or refused is a matter within the sound discretion of the court, and is not sufficient ground of reversible error unless for gross abuse.

In an action to recover damages for assault, a new trial will not be granted on the allegation that the verdict of $45,000 was excessive where it appears that the defendant deliberately shot at the plaintiff, three times with a Winchester rifle, injuring him twice and maiming him for life.

*Practice, C. P.—Verdict—Conditional verdict—New trial.*

The trial court may impose terms upon either or both the parties, as conditions of the grant or refusal of a new trial, and the latitude allowed to the discretion of the court to this end is very great.

Where a verdict of $45,000 has been returned in an action of trespass for an aggravated assault and battery, the trial court does not abuse its discretion directing that a new trial be granted unless the plaintiff within ten days files a stipulation to accept in full satisfaction of his claim the sum of $35,000 to be paid or secured within thirty days after notice of the filing of the stipulation.

*Appeals—Practice, Supreme Court—Assignments of error—Erroneous assignments.*

It is improper to assign error as follows: "The court erred in omitting in its general charge to instruct the jury as requested by defendant by his counsel as follows:" setting forth a mere suggestion of counsel as to the duty of the court under the circumstances.

It is erroneous and improper to assign error as follows: "The court erred in charging the jury as follows, special attention being directed to those portions of the charge inclosed in brackets:" setting forth the whole charge.

Argued May 12, 1908. Appeal, No. 43, Jan. T., 1908, by defendant, from judgment of C. P. Fayette Co., Dec. T., 1906, No. 34, on verdict for plaintiff in case of William S. Wirsing *v.* James R. Smith. Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries caused by aggravated assault and battery. Before REPPERT, P. J.

At the trial it appeared that plaintiff, while under age, ran away with defendant's daughter, about eighteen years old, and married her. The couple returned to the house of the plaintiff's father. While there they received a letter from defendant expressing his forgiveness, and inviting them to dine on a day stated.

The court in its charge described the assault as follows:

In acceptance of this invitation the young man and his wife drove to Smithfield upon the day named, reaching there about 9 : 30 in the morning. After hitching the horse in the alley below the defendant's house, they approached the front door. Just then the defendant called out, "Is that Bill Wirsing?"— the plaintiff was on the portico—the defendant called out again,

"Is that you, Bill Wirsing?" and the plaintiff stepped out about two steps. Mrs. Smith, the defendant's wife, was just inside the door and called to her daughter, Martha, who had come to the door when the plaintiff and his wife had stepped up on the portico, to come inside. As the plaintiff stepped back the two steps he speaks of, he saw the defendant bringing his rifle around out of an upstairs window. The plaintiff jumped back just as the defendant fired, the shot taking effect in the third finger of the right hand, severing it, or almost severing it.

After the shot was fired, the plaintiff told his wife that the best thing they could do was to stand there until the defendant started downstairs, and then try to escape up the street. They heard the defendant start across the room upstairs, and when he got to the head of the stairs they started to run up the street. The defendant came out of the house and fired the second shot, which missed. The plaintiff says he fell just as that shot was fired and it failed to take effect. A third shot was fired which took effect in the right arm of the plaintiff, and then a fourth, which missed.

The plaintiff continued running, and by an alley, reached Grim's butcher shop and asked to be concealed, disclosing his condition—that he had been shot. He remained there until his wife came, and he was then taken to a hotel across the way where his wounds were dressed, and whence he was removed to the hospital at this place.

The plaintiff's statement of the transaction is corroborated by his wife. Other witnesses, attracted by the first shot, saw the defendant fire the three shots from the outside, in the street. They say that his aim was deliberate, and that between the shots he advanced up the street, returning to his house after the three shots were fired.

\*    \*    \*    \*    \*    \*    \*    \*

The defendant doesn't deny that the encounter that resulted in the plaintiff's injury took place substantially as the plaintiff alleges, nor is it denied that he is entitled to fair compensation for his injuries, as the jury may determine them to be. But it is claimed in his behalf that the circumstances are such as to prevent the imposition of exemplary or punitive damages; that for a month prior to this trouble the defendant had given

himself up to the excessive indulgence in liquor, drinking from a quart to three pints per day, and that the marriage of his daughter, without his knowledge and consent, brought him great trouble and anxiety, and, in his condition, resulted in great nervous tension; that after learning that his daughter and Mr. Wirsing had left home, he and Mr. Sackett went to Cumberland in the hope of intercepting them, and that while on that trip Mr. Sackett said the defendant drank several times while they were in Connellsville, and that during the trip his principal talk was about his daughter, crying and making considerable fuss and talk, as the witness expressed it. On June 5 the defendant was in Dr. Altman's office, and the doctor says he was strongly under the influence of liquor, and that while he, the doctor, did not examine his physical condition, he prescribed for him for excessive drinking. The defendant related to the doctor the story of his daughter's elopement. On the day of the shooting, after hearing of it, Mr. Sackett went to the defendant's house and saw him for a few minutes, and found him lying on the bed and pretty stupid. The defendant says that when he wrote the letter to his daughter, inviting her and her husband and others to dinner, he meant what he said; that when Wirsing and his wife arrived he was upstairs, reading a newspaper; that he had been drinking, having taken a heavy drink fifteen minutes before; that when Wirsing drove past the sight of him made him so mad that he lost control of himself and his head began to roar, which was the last he remembered until his boy took the gun from him in the street; and that he knew nothing of what he did that day until his wife, the next morning, told him what had occurred.

At the trial the defendant made the following offer:

Mr. Hertzog: As a beginning of the course of conduct between the plaintiff and defendant, which continued in various ways up until the time that the shooting occurred, I propose to show by this witness, that four or five years ago a sister of the plaintiff wrote a letter to the brother of the plaintiff's wife, in which she stated that the reason that their father, H. C. Wirsing, had purchased the farm from Mr. Smith, was that he wanted his daughter, who was writing the letter, to marry Joe, a son of the defendant, and his son Will to marry Malinda, a

daughter of the defendant, and one of them could live on that farm, and Mr. Smith was able to buy the best property they could want in town for the others to live on, and it made no difference how much their " pap," meaning Smith, would oppose the marriage, they could arrange it to have them married, anyhow ; that they could run away to Cumberland and get married. This was followed by another letter in a short time, in answer to the first letter, and repeating, in substance, matters that she had suggested in the first, and that these letters were burned by Smith and his wife at the time they were received. This for the purpose of introducing the matters between the two families ; leading him to believe that it was the plan of the father of those children to try to get them married to get control of his money ; and is offered as one step in the general evidence to follow on up to the time the shooting occurred, to show the condition of mind Smith was in when the shots were fired, for the purpose of mitigating the punitive damages, the children at the time being eleven or twelve years of age.

Mr. Crow : The plaintiff objects to the testimony as being incompetent and irrelevant, for the reason that it doesn't connect William Wirsing with the transaction.

The Court : Objection sustained and exception. [1]

Mr. Crow : " Q. Mr. Smith, I will ask you if at the time you were sentenced, the court didn't make you the proposition that if you would settle with this young man—"

Mr. Hertzog : We object. We want you to make that offer privately.

Mr. Crow : The plaintiff offers to ask the defendant, if at the time the sentence was imposed upon him the court did not state, that if within the term the case for damages was settled, a portion of the sentence, not exceeding one-half, would be remitted.

Mr. Hertzog : The offer is objected to as incompetent and irrelevant, for the following reasons : First, the proposition so made by the court did not include in it any amount at which the case for damages should be settled. Second, that it is incompetent and irrelevant, generally ; and third, the offer made was in the line of various attempts that had been made towards a settlement of the case between the parties, which had failed,

and is, therefore, not competent evidence to be introduced here, being in the nature of a compromise offer.

The Court: Objection overruled and exception. [2]

Defendant presented these points:

Punitive damages cannot be recovered in this action for the reason that the defendant has been sentenced to a long term of imprisonment, by the court of quarter sessions of this county, for the same act as that upon which this suit is based and which term of imprisonment he is now serving. *Answer:* Refused. [3]

The plaintiff is only entitled to recover such amount in this action as will compensate him for the injury and loss sustained by him by reason of defendant's conduct, and the jury cannot add an additional amount by way of punishment for the public crime committed by him. *Answer:* Refused. [4]

Verdict and judgment for plaintiff for $45,000. Defendant appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (3, 4) above instructions, quoting them.

5. The court erred in omitting in its general charge, to instruct the jury as requested by defendant by his counsel as follows:

Mr. Hertzog: The offer made on the part of the defendant, of the record of the cases in the quarter sessions of the peace of Fayette county against the defendant, was restricted in the offer, to the one purpose of the mitigation of punitive damages, and for this reason the counsel in his argument had no right to use it as he did—to claim that that offer, in effect, proved that the defendant committed this act willfully and maliciously, and that it, therefore, destroyed the effect of the defendant's testimony as a witness in that regard. And it is further the duty of the court to so instruct the jury, as to withdraw from them, in its general charge, the right to use this offer for any other purpose than that to which it was restricted in the offer itself, and the defendant objects to its use for any other purpose.

6. The court erred in overruling the motion to set aside the verdict as unreasonable and excessive, such action and refusal to grant the motion being a misuse and abuse of the court's

discretionary power in passing upon an application for a new trial.

7. It was an abuse of discretion and, therefore, error on the part of the court below to not sustain defendant's motion for a new trial upon the first reason assigned in support thereof, which motion and reason are as follows: The defendant, by his counsel, respectfully moves the court for a new trial, and assigns in support thereof the following reasons: 1. The verdict is excessive and unreasonable under all the evidence in the case.

8. The court erred in making the following final order, to wit: November , 1907, this matter came on to be heard and was argued by counsel as on a rule to show cause why a new trial should not be granted.

And now, December 2, 1907, after consideration, it is ordered that a new trial be granted in this case unless plaintiff within ten days file a stipulation that he will accept in full satisfaction of his claim the sum of $35,000, to be paid, or security approved by the court to pay the same to be given, within thirty days after notice of the filing of said stipulation to defendant or his counsel.

If said stipulation is filed and payment of said amount, with interest from the date of the verdict and costs, is not made or secured as aforesaid within thirty days, then judgment is to be entered on the verdict, as rendered upon payment of the jury fee. No payment was made or secured, and judgment was entered on the verdict.

9. The court erred in charging the jury as follows; especial attention being directed to those portions of the charge enclosed in brackets; quoting the whole charge.

*J. A. Langfitt,* of *Langfitt & McIntosh,* and *D. M. Hertzog,* with them *Smith & Brownfield,* for appellant.—Punitive damages cannot be recovered in this action for the reason that the defendant has been sentenced to a long term of imprisonment by the court of quarter sessions of this county for the same act as that upon which this suit is based, and which term of imprisonment he is now serving: Austin v. Wilson, 58 Mass. 273; Hendrickson v. Kingsbury, 21 Ia. 379; Humphries v. Johnson, 20 Ind. 190; Lowell v. Short, 58 Mass. 275; Fox v. Ohio, 46

U. S. 410; Reg. v. Bird, 2 Denison, 94, 222; Windsor v. Queen
L. R. 1 Q. B. 289; Huling v. Henderson, 161 Pa. 553; Sperry
v. Seidel, 218 Pa. 16; Rhodes v. Rodgers, 151 Pa. 634; Cor-
nelius v. Hambay, 150 Pa. 359; Fay v. Parker, 53 N. H. 342;
Smith v. Overby, 30 Ga. 241; Stewart v. Maddox, 63 Ind. 51;
Wabash Printing, etc., Co. v. Crumrine, 123 Ind. 89 (21 N. E.
Repr. 904); Post Co. v. McArthur, 16 Mich. 447; Murphy v.
Hobbs, 7 Colo. 541 (5 Pac. Repr. 119); Spokane Truck, etc.,
Co. v. Hoefer, 2 Wash. 45 (25 Pac. Repr. 1072); Boyer v. Barr,
8 Neb. 68.

The verdict was excessive: Marion v. Chicago, etc., Ry.
Co., 64 Iowa, 568; Goldsmith v. Sefton, 3 Anst. 808; Graham
& Waterman on New Trials, 43.

*W. E. Crow,* of *Crow & Shelby,* for appellee.—Exemplary
damages may have been given in trespass whenever there has
been oppression, outrage or vindictiveness on the part of the
trespasser.   And if there be such evidence, the jury, and not
the court, are to determine whether it is a proper case for ex-
emplary damages: McBride v. McLaughlin, 5 Watts, 375;
Amer v. Longstreth, 10 Pa. 145; Huling v. Henderson, 161.
Pa. 553; McCarthy v. De Armit, 99 Pa. 63; Railway Com-
pany v. Rozenzweig, 113 Pa. 519–544; Railway Company v.
Lyon, 123 Pa. 140; Cornelius v. Hambay, 150 Pa. 359; Voltz
v. Blackmar, 64 N. Y. 440.

The verdict is not excessive: L. S. & M. S. Ry. Co. v. Rosen-
zweig, 113 Pa. 519; Stauffer v. Reading, 208 Pa. 436; Smith
v. Times Pub. Co., 178 Pa. 481.

The conditional order of the court below was proper: Flem-
ing v. Dixon, 194 Pa. 67; Campbell v. Bridge Co., 23 Pa. Su-
perior Ct. 138; Stauffer v. Reading, 206 Pa. 479.

Opinion by Mr. Justice Elkin, June 2, 1908:

The first and second assignments of error, as we view the
case, are without merit.   The first is based upon the refusal of
the court to admit the introduction of testimony relating to
collateral matters, not connected with the parties to the action,
nor had it any relevancy to the issue, and it was properly ex-
cluded.   As to the second, it may be observed, that the de-
fendant had offered in evidence the record of his conviction

for a criminal offense growing out of the shooting, and followed this up by going on the stand for the purpose of showing that at the time of the trial of the present case he was serving out the term for which he had been sentenced, and this in mitigation of punitive damages. Under these circumstances no harm was done, nor was it reversible error to permit the plaintiff, on cross-examination, to develop all the facts shown by the record or by the testimony of defendant at the time sentence was imposed.

The third and fourth assignments relate to the right of plaintiff, under the facts of the case, to recover punitive damages. It is contended that because defendant had been convicted of a criminal offense, growing out of the same acts, and was serving a term of imprisonment for his crime, punitive damages should not be allowed in the civil action. The answer is, apart from the views of text-writers on this question, of which there are many reaching different conclusions, and independently of the rule established by courts in other jurisdictions, and in this there is no uniformity, it is settled law in Pennsylvania that punitive damages may be recovered if the facts warrant their imposition, and this even in a case where there has been a conviction of a criminal offense: Portor v. Seiler, 23 Pa. 424; Cornelius v. Hambay, 150 Pa. 359; Rhodes v. Rodgers, 151 Pa. 634; Matheis v. Mazet, 164 Pa. 580. In such cases the rule is, that the record showing conviction and sentence may be offered in evidence, and considered by the jury, in mitigation of exemplary damages, and this was done in the present case.

The fifth assignment is not in proper form, does not show anything before this court to review and will not be considered. The sixth and seventh assignments complain of the refusal of the court below to grant a new trial on the ground that the verdict was unreasonable and excessive. As a rule, whether a new trial be granted or refused is a matter within the sound discretion of the court, and certainly is not sufficient ground of reversible error unless for gross abuse, and this does not appear in the case at bar. Nor are we convinced that the conditional order of the court below, after trial and verdict, complained of in the eighth assignment, would justify a reversal of the judgment entered in the present case. The

learned trial judge evidently followed the rule of our own cases in this respect in a well-meaning effort to have the matters in dispute between the parties finally determined. In Fleming v. Dixon, 194 Pa. 67, our Brother Brown, in passing upon a conditional order made by the court below and not accepted by defendant, said, " the relief tendered was refused. The order of court providing for it was made for the benefit of the defendant now complaining of it, and we overrule his second assignment of error." In Stauffer .v. Reading, 206 Pa. 479, the present chief justice, in reviewing the discretionary power of courts in granting or refusing new trials, among other things, said : " Hence it is well settled that the court may impose terms upon either or both of the parties as conditions of the grant or refusal, and the latitude allowed to the discretion of the court to this end is very great." It is clear, therefore, that the learned court below was well within the rule of our own cases in this respect, and certainly should not be convicted of error for doing what this court has said he had the right to do in the proper exercise of his judicial discretion.

The error suggested in the ninth and last specification cannot be considered, because the assignment is not in proper form and does not bring before this court anything for consideration. The circumstances under which defendant maliciously and brutally assaulted plaintiff, with the evident intention to take life, and the murderous attack having seriously and permanently disabled him, justified the court in submitting the question of punitive damages to the jury, which was done in a careful charge defining the application of the rule. It may be that the jury took into consideration the aggravated, unwarranted and felonious character of the shooting in rendering their verdict, but this they had the right to do, and it is not for us to say that there was reversible error on the sole ground of the verdict being excessive, for if there ever was a case in which a jury was justified in returning a large verdict, not only as compensation for the injury done, but as a punishment to the offender, this would seem to be the one.

Judgment affirmed.