## Sieber, Appellant, *v.* Pettit.

*Husband and wife—Alienation of wife's affections—Adultery—Charge of court—Evidence.*

In an action to recover damages for alienation of a wife's affections where the defendant denies the act of sexual intercourse, but this is admitted by the wife and her testimony is corroborated by numerous facts and circumstances, and by the testimony of numerous witnesses as to the truth of her testimony in every particular except the actual sexual intercourse, it is error for the judge to assume that nothing but circumstantial evidence had been adduced by the plaintiff and to charge that " these facts and circumstances must be such as to satisfy a reasonable and just man, beyond a reasonable doubt, that the adultery was committed."

Argued May 21, 1900. Appeal, No. 3, Jan. T., 1900, by

plaintiff, from judgment of C. P. Juniata Co., Sept. T., 1899, No. 44, on verdict for defendant in case of Isaac N. Sieber v. Adam J. Pettit. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Trespass to recover damages for the alienation of a wife's affections. Before LYONS, P. J.

The court charged in part as follows:

[The first important question for you to determine is, did the defendant commit adultery with the plaintiff's wife, or have sexual intercourse with her? There is no witness in the case who testifies that he or she saw the act committed. It is rare that such proof can be furnished in cases of this kind on account of the secret character of the offense, and, therefore, the law allows it to be established by proof of facts and circumstances from which the intercourse may be inferred, and it is by the latter kind of evidence that the plaintiff has endeavored to prove the fact of the adultery of the defendant with his wife. He has introduced testimony of witnesses tending to prove the existence of facts and circumstances from which you are asked to infer the guilt of the defendant. In order to establish his guilt in this way you must be satisfied by a preponderance of the evidence that these facts and circumstances must be such as to satisfy a reasonable and just man, beyond a reasonable doubt, that the adultery was committed, and you are therefore to weigh all the evidence in the case carefully and scrutinize it with that degree of caution which the importance of the case demands.] [1] Were the circumstances relied upon to fasten this alleged offense upon the defendant such that a reasonable man would infer that the defendant had committed adultery with the plaintiff's wife? I shall not call your attention specially to the evidence on the one side or the other. You will recollect it for yourselves and give it such weight as in the exercise of your best judgment it is entitled to receive, and in doing this you will take into consideration the interest that the witnesses may have in the case, the apparent candor of the witnesses, the character of the witnesses for truth and veracity, their bias, their feeling in the case, their friendship or animosity towards the parties, and you will thus weigh and scrutinize the

testimony of the large number of witnesses who have testified in your hearing, so that when you have done, you will have faithfully sought for the truth and render such verdict as will satisfy your minds that you have done justice between these parties.

Quite a number of circumstances are relied upon by the plaintiff to establish the defendant's unlawful relations with his wife. .I shall not attempt to call your attention to all of them; I do not know whether I could do so if I did. They have been commented upon by the counsel upon the one side and the other. I believe you have paid strict and careful attention to the testimony in this case and therefore by the exercise of your mental powers recollect it all, weigh it carefully and sift it so you may find what the truth is.

[The first circumstance relied upon by the plaintiff in this case was the visit of the defendant to the plaintiff's house and his family. Was there anything wrong in that? Was there anything in the fact that he and his wife called at the house of the plaintiff during their earlier acquaintance and sat there and discussed the sermons of the day and conversed about religious topics, and that kind of thing? Would you infer that the defendant had a guilty mind and heart when he went to that house for that purpose under the testimony in this case? That is a question for you. You are to determine that under all the evidence in the case.] [3] [Perhaps not in order, but as I recollect it, the plaintiff also relies upon the circumstances of the defendant meeting the plaintiff's wife in her vacant house upon the corner of Sixth and Market streets, in the borough of Port Royal, if I recollect the location correctly. You have heard the testimony as to that. How did he come there? What did he go there for? Is it true as testified by this plaintiff's wife that in that house he asked her to take a seat beside him on the stairway; that he put his arms around her and that he there in a short time had sexual intercourse with her for the first time? Do you believe that? Does the evidence satisfy you that this is true? Now weigh all the surrounding circumstances carefully, all the evidence in relation to it, the testimony of the other witnesses who say they saw him go there, his own admission he was there, his denial of any improper motive or act while there, and all that take into consideration, in deter-

mining whether or not that is true.] [4] [Then the meeting in the vacant house of the defendant down on Second street. You recollect the testimony of the witnesses who saw him go in there and who saw her come along with her bucket of water and go into the house. Was it true that she went in there to meet this defendant for the purpose of illicit intercourse, or is it true as the defendant alleges, that she was there to see him in regard to the endorsement of notes for her, I do not recollect all of it, what she called there for?] [5] [Then as to the meetings in the alley in the rear of the residence of the plaintiff and his wife, at the time of day it is alleged they met there, and there is a circumstance there in the case that I feel it is my duty to call to your attention, because it is unusual, and that is the testimony of Charles Koontz, who went upon the witness stand and described the meeting which he observed between the defendant and the plaintiff's wife, testifying he saw her go in the night and call for Mr. Pettit three times, and not until the third call did she get an answer, and then stopped, without telling anything further about it, and when pressed upon cross-examination he said that Mr. Pettit not only answered but in substance said to this plaintiff's wife that he had not time to do what she wanted and that she said then and there, " If you haven't time now I will take you into court where you will have to take time," and that is a significant fact. If that witness was placed on the stand to leave the impression upon the court and jury that the circumstances were as first detailed by the witness and he was then dropped, it was leaving a false impression upon the jury's mind and upon the mind of the court. Now, I say to you, wherever that occurs in a case it is your duty to scan all the evidence carefully, and the evidence of every witness, and be satisfied of the truth before you base a verdict upon it. The witness who will conceal a part of the truth does an injustice to himself and to the administration of justice. He is as much to tell that which makes for one side as he is that which makes for the other, and it is the duty of the party who puts him upon the stand to have him disclose the whole truth, that no injustice may be done.] [6]

[Now then, gentleman, taking into consideration the testimony in regard to the meeting in the granary: How did they come to be there? What was their purpose? Was this con-

sistent with innocence, or does it impress you that there was a guilty intent in meeting there? Also consider all the evidence in regard to the fact that the defendant delivered goods to the house of the plaintiff's wife, as to his entering the door, what they heard afterwards, what they did. Was it true or were they mistaken? Was the latch upon the door faulty? Consider all the facts and circumstances in regard to that. Weigh them carefully.] [7]

[You have heard the testimony of the witnesses as to the visits of the plaintiff's wife to the store of the defendant. How was that? What was her purpose there? Did she go there for the purpose of buying goods? Did she go there for the purpose of seeing the defendant to get him to indorse notes to aid her in her financial embarrassment, or did she go there for the purpose of gratifying her passions and to satisfy the lust of this defendant? How was it? What were the circumstances as detailed by the witnesses? That you must look at.] [8]

You must take into account the credibility of the witnesses, the probability of the truthfulness of their stories, and thus weigh the fact as to each circumstance relied upon in the whole case. [And the same as to the meetings at the warehouse, and in the alley down near Mr. Groninger's, and in the woods south of the Tuscarora creek, and over at the east side of the river, in the river bridge. In all these instances what was the motive? How did they come to meet there? Was it at the solicitation of the defendant, or was it, as the defendant alleges, that this plaintiff's wife dogged his footsteps from day to day; that she met him at every corner that she could; that she was importuning him for one thing and another; that first he indorsed notes for her; that then she wanted him to let her have the wheat that he had purchased at judicial sale and the straw he had taken from her land, and remove the judgments which he had entered against her on the docket. Look at all the circumstances. Will they explain why this woman was there, why she was seeking the presence of the defendant, why she was talking to him, why she was interviewing him, because so far as I recollect it, but you must recollect it for yourselves, the testimony shows that the plaintiff's wife sought out the defendant, not that he was seeking her except at their own dwelling. How then is the proof of the matter? Is it true in point of fact, as testified

to by one witness in corroboration of the defendant's evidence, that he tried to avoid her? Mrs. Groninger, I believe it was, testified that she observed her go and place herself on the highway and seated herself there and stayed there until he came along with his cows and he did not stop but that he drove his cows rapidly past her and she had to run to keep up with him. Is that the conduct of a man who is seeking his paramour to gratify his lusts upon her person? If you believe that testimony, what interest had this witness in the case? Had she any? Was there any motive to tell what was not true? There, you will find some of the means by which you must weigh all the evidence in the case.] [9]

[Then, again, I call your attention to the testimony of the witnesses as to what occurred in Philadelphia at that hotel. Did the defendant plan and plot the trip that they might go there for the purpose of mutual gratification and enjoyment of each other? The mere fact that they went to the hotel and that the defendant registered his own name and that of this plaintiff's wife would not of itself prove that there was any guilty conduct on their part. If it is true, as alleged, that this plaintiff and his wife asked that they go together to Philadelphia, then there is no significance in the fact that they stopped there, so far as I can judge, and their names were properly registered. If they had registered under assumed names and had represented themselves as other persons than what they really were it would then have been strong evidence that there was a guilty intent. Again, if it is true, and you should so find, that this was not a reputable house, the evidence is for you to say whether it is or not, is there any evidence that the defendant knew that it was a disreputable house? If he stopped at a place of that kind and did not know it, that would be no evidence to convict him.

Judge Bucher: He said he had been there before.

The Court: He swears to that. But so far as to its being an immoral house I fail to see that the evidence justifies that fact. However, I submit it to the jury to say whether it was or not. You are the judges of the facts. Whether the witness understood the questions when they were propounded to him as to the character of the house is for you to determine. You will recollect that. What his appearance was on the stand,

whether he understood the language used, and the answers he gave, is all a matter for you.] [10]

Now, then, I say to you, that you should consider all the evidence in the case before you come to a conclusion. I have not adverted to all the evidence of the plaintiff or defendant, nor perhaps called your attention to all the circumstances in the case, but you will remember it and consider all of them, and consider the conduct of the parties.

[Is it true that at an early period when this gossip was going the rounds of Port Royal that this plaintiff was informed of the talk of the neighborhood and the charges of undue intimacy between the defendant and his wife? Is it true, as testified to by Mr. Kiester, that he informed both Mr. Seiber and his wife at their urgent request why they were not invited to a picnic on a certain date? Is it true, in point of fact, that Mr. and Mrs. Pettit visited the house of the plaintiff and his wife and requested that she desist from visiting his store and coming there, or meeting or speaking to him? Do you believe the testimony of Mrs. Pettit and Mr. Pettit as to what occurred at that time? Do you believe the testimony of what occurred at the house of Mr. Petit on the evening when the Reverend Lloyd and Mr. Wisehaupt were there, when this plaintiff's wife charged him with having kissed her in the store upstairs and that he vehemently denied it? Now you should weigh all this testimony on the one side and the other, just as carefully on the one side as the other, and scrutinize it, so that you can determine how the fact is and let your verdict be accordingly.] [11]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–11) above instructions, quoting them.

*Wilberforce Schweyer* and *J. Howard Neely*, with them *J. C. Bucher*, for appellant.—A charge whose tendency is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is reversible error: Phila. Trust, Safe Deposit, etc., v. Phila. & Erie R. R. Co., 177 Pa. 38; Heslop v. Heslop, 82 Pa. 537; Sampson v. Sampson, 4 S. & R. 329; Harper v. Kean, 11 S. & R. 280; Hocker v. Jamison, 2 W. & S. 438; Linn v. Com., 96 Pa. 285; Cross v. Tyrone

Mining & Mfg. Co., 121 Pa. 387; Rosenagle v. Handley, 151 Pa. 107; Dooner v. Del. & Hudson Canal Co., 164 Pa. 17.

The charge as a whole had a tendency to belittle and prejudice plaintiff's case, and in tone and expression is not a judicial presentation of the case : Phila. Trust, Safe Deposit, etc., Co. v. Phila. & Erie R. R. Co., 177 Pa. 38; McCabe v. Philadelphia, 12 Pa. Superior Ct. 383.

*Frank M. M. Pennell* and *Louis E. Atkinson*, for appellee.— A trial judge may express an opinion fairly on the weight and value of evidence, and when he does so without misleading or controlling the jury in their disposition of the facts, there is no ground for reversal: Fredericks v. Northern Cent. R. R. Co., 157 Pa. 103; Mohney v. Evans, 51 Pa. 80; Com. v. Orr, 138 Pa. 276; Didier v. Penna. Co., 146 Pa. 582; Borham v. Davis, 146 Pa. 72; Ralston v. Groff, 55 Pa. 276; Newhard v. Yundt, 132 Pa. 324; Follmer v. McGinley, 146 Pa. 517; Krepps v. Carlisle, 157 Pa. 358–365; Collins v. Leafey, 124 Pa. 203.

The court's explanatory comments upon the weight of certain testimony, though unfavorable to one of the parties, do not disclose error for which the judgment should be reversed : Follmer v. McGinley, 146 Pa. 517.

The fact that plaintiff continued to cohabit with the wife, after he had knowledge of the facts, is cogent evidence against the truth of the present charge : State v. Marvin, 35 N. H. 22; Harris v. Rupel, 14 Indiana, 209; Cummins v. Cummins, 15 N. J. Eq. 138.

When an action is brought for criminal conversation, the law is now clearly settled to be that if the husband consents to his wife's adultery, it goes in bar of the action. If he be guilty of negligence, or of loose or improper conduct, not amounting to consent, it goes in reduction of damages : Bunnell v. Greathead, 49 Barb. (N. Y.) 106; Duberley v. Gunning, 4 T. & R. 657; Winter v. Henn, 4 C. & P. 494; Foley v. Peterborough, 4 Doug. 294.

OPINION BY MR. JUSTICE DEAN, July 17, 1901 :

Seiber, the plaintiff, and his wife, Anna B. Jacobs, were married in December, 1878. So far as appears they were at the time reputable young persons ; she was the only daughter of a wealthy

and prominent citizen and inherited most of his estate ; both moved in the best social circles of the neighborhood. After marriage they went to housekeeping in Port Royal, a village in Juniata county, and lived happily together until 1893. In the mean time two children were born. The defendant Pettit was a reputable country merchant of the village having a wife and family. In the year 1893, an intimacy sprang up between Pettit and Mrs. Seiber, which continued to the year 1895. From the first it was of such character as to attract the notice and suspicions of the neighborhood; in fact, the conduct of both parties was so significant of wrongdoing, that it would have been strange, if it had not created doubts of innocence. When the husband, Seiber, became convinced of the guilt of his wife and the criminal conduct of Pettit, he separated from her and brought this suit for damages.

The manifest weight of the evidence clearly established the fact of criminal intimacy. True, defendant denied under oath actual adultery; but the wife's own testimony admitted it; not occasionally, but time after time, kept up weekly for years, accompanied with numerous facts and circumstances, and her story was corroborated throughout, not only by proof of these circumstances, but by the testimony of numerous witnesses as to the truth of her testimony in every particular except the actual sexual intercourse. If ever the manifest weight of the testimony established a fact, it established here, long continued adulterous intercourse.

But, the evidence pointed with more or less significance to the fact, that the wife was as active in luring him from the path of virtue as he was in enticing her into his embraces. But at the trial of the cause the learned judge of the court below, seems to have assumed that plaintiff's wife was a wanton, and that defendant was a weak brother, who fell because of her allurements, and therefore she was deserving of censure, he of sympathy. Actuated by this sentiment, which did him no discredit if displayed elsewhere than in the court room, he fell into grave error. His charge made the case to turn on the fact of sexual intercourse, which in the face of the undisputed evidence could not reasonably be questioned, instead of on the extent of damages which was fairly in dispute. He gave undue prominence to the oath of defendant, and belittled all the

evidence of plaintiff. The charge was partial, and did gross injustice to plaintiff, who was a wronged husband.

The man who breaks up the home of his neighbor, by debauching his wife, rendering his children worse than motherless, is not excused because he is weak and being tempted by the woman falls. The wronged husband's right of action is still well founded. Less money may indemnify him for the loss of such a wife's affection and society, and a milder penalty may suffice to punish such a degree of guilt on the part of the man, but the essence of the action, a wrong and injury to an innocent husband, remains. And this is the theory, and the only correct theory on which the case should have been tried. The first paragraph of the charge points to the bias of the learned judge; it is as follows:

"The first important question for you to determine is, did the defendant commit adultery with the plaintiff's wife, or have sexual intercourse with her? There is no witness in the case who testifies that he or she saw the act committed. It is rare that such proof can be furnished in cases of this kind, on account of the secret character of the offense, and therefore the law allows it to be established by proof of facts and circumstances from which the intercourse may be inferred, and it is by the latter kind of evidence that the plaintiff has endeavored to prove the fact of the adultery of the defendant with his wife. He has introduced testimony of witnesses tending to prove the existence of facts and circumstances from which you are asked to infer the guilt of the defendant. In order to establish his guilt in this way, you must be satisfied by a preponderance of the evidence that these facts and circumstances must be such as to satisfy a reasonable and just man, beyond a reasonable doubt, that the adultery was committed, and you are, therefore, to weigh all the evidence in the case carefully and scrutinize it with that degree of caution, which the importance of the case demands."

This contains two very grave misstatements, one of law and one of fact. No such rule of evidence applies in an action for damages; the simple preponderance of evidence affirms or negatives plaintiff's averments, not such as will satisfy a reasonable and just man beyond reasonable doubt. Then the statement, that plaintiff sought to sustain his side of the issue only

by inference from circumstances was a clear mistake. The wife testified positively to repeated acts of adultery running through years, giving every circumstance with surroundings of time and place. After the jury had been out some time the learned judge recalled them and sought to correct the error in a few brief words, by stating the correct rule of law, and also correcting the declaration that plaintiff's case rested on circumstances; but this could not, in all probability have cured the error, for the whole charge was based on the theory, that nothing but circumstantial evidence had been adduced by plaintiff; if, as there was, full, direct and positive evidence of the main fact, then the whole charge was contradicted and went for nothing, so far as aiding the jury in their deliberation. To illustrate our meaning take this excerpt from the general charge:

"Then, again, I call your attention to the testimony of the witnesses, as to what occurred in Philadelphia at that hotel. Did the defendant plan and plot the trip that they might go there for the purpose of mutual gratification and enjoyment of each other? The mere fact that they went to the hotel and that the defendant registered his own name and that of this plaintiff's wife would not of itself prove that there was any guilty conduct on their part. If it is true, as alleged, that this plaintiff and his wife asked that they go together to Philadelphia, then there is no significance in the fact that they stopped there, so far as I can judge and their names were properly registered. If they had registered under assumed names, and had represented themselves as other persons than what they really were, it would have been strong evidence that there was a guilty intent. Again, if it is true, and you should so find, that this was not a reputable house, the evidence is for you to say whether it is or not, is there any evidence that the defendant knew that it was a disreputable house? If he stopped at a place of that kind and did not know it, that would be no evidence to convict him."

So far as this testimony mentioned, tended to prove guilt it was wholly circumstantial, and might or might not warrant the inference claimed by plaintiff; but it wholly omits the wife's positive testimony, that the trip to Philadelphia was planned by them for purpose of illicit intercourse; that the

husband was falsely told she merely desired to transact some business with reference to her father's estate; that when she arrived she would lodge with a lady friend, an old acquaintance, and merely desired Pettit as an escort on her journey; that she transacted no business whatever and did not see her friend. And let it be borne in mind, all these facts were unquestionably proven. The first instruction in all probability, would influence the jury to disregard the Philadelphia trip as of no consequence, yet her positive testimony with the undoubted corroboration clearly established guilt. No mere statement by the judge after the jury had deliberated, that he had committed an inadvertent error in assuming throughout his charge, that plaintiff's case rested on circumstantial evidence, could bring back to their minds the weight of the fact resting on both circumstantial and positive evidence.

What we have noted are instances of mistaken and partial instructions running all through the charge. Practically, the fact of adultery was established by the overwhelming weight of the evidence; the conduct of defendant is reconcilable with no other reasonable conclusion, even putting out of view the positive testimony of the wife.

His testimony admits nearly every significant fact alleged, except only the act of sexual intercourse; he was less than a man if under the admitted facts he was not guilty of this too. In substance, his statement would perhaps induce a conviction that he was no more guilty than she. But this does not help him even if it be true; it can only mitigate damages; it is but the old cowardly excuse set up by the first man, "The woman gave me of the tree and I did eat." It did not save from the penalty the first defendant and cannot under the law save this one. The extent of the penalty alone is for the jury.

There are twenty-three assignments of error. The first to the eleventh inclusive alleging inadequacy of charge and partiality of defendants are sustained, the others have no such merit as require particular notice.

The judgment is reversed and v. f. d. n. awarded.