## Clearfield Cheese Company, Inc., *v.* United Stone and Allied Products Workers of America, Appellant.

Argued April 21, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Edward T. Kelley,* for appellants.

*Frank A. Whitsett,* with him *Robert V. Maine, Frank G. Smith* and *Smith, Maine, Whitsett & Lee,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1954:

Counsel for the plaintiff-appellee announces in his brief: "The record is in a state of confusion."

Counsel for the defendant-appellants states in his brief: "The attorney was misled and confused somewhat by the Court's order and the National Labor Relations Board hearings."

On August 21, 1952, the court below entered an order which said, inter alia: ". . . whether to determine the charge of unfair labor practises, or certification of a bargaining agent, *we do not know; but we presume this case may be of little further interest to either party.*" (Emphasis supplied.) With such seeds of indecision falling into the hot soil of partisan contro-

versy, it was inevitable that eventually a tangled growth of uncertainty would cover this entire litigation. However, cutting through the maze of pleadings and orders which frequently are self-contradictory and overlapping, we find the following salient facts:

On October 17, 1951, the employes of the Clearfield Cheese Company, claiming certain grievances against their employers, went out on strike. On October 29, 1951, the plaintiff, Clearfield Cheese Company filed a bill in equity against the defendants claiming damages for interference with its business and asking for an injunction to prohibit further interferences. The injunction was granted but no disposition was made of the claim for damages. Picketing at the plant ceased on November 13, 1951.

The Union petitioned the National Labor Relations Board to intervene and on March 30, 1953, after a 12 days' hearing (June 23 to July 5, 1952) the Board concluded that the Clearfield Cheese Company had engaged in "unfair labor practices" within the meaning of Section 8 of the National Labor Relations Act.

In the meantime, on August 21, 1952, the court below handed down the unfortunate inconclusive order, already referred to, its full text being: "Now, August 21, 1952, for the reasons given in the foregoing Opinion, the motion to dismiss is refused. We understand that the picketing has ceased, the men have returned to work, and proceedings are now being carried on before the National Labor Relations Board; whether to determine the charge of unfair labor practices, or certification of a bargaining agent, we do not know; but we presume this case may be of little further interest to either party. The Preliminary Injunction has now ceased to exist, and upon failure to file

an answer on the merits within twenty days from this date, a Decree Pro Confesso may be taken by the plaintiff against the defendants, or a stipulation may be entered into by both parties agreeing to discontinue the action."

When this order was entered, the strike had been a matter of history for nine months, the National Labor Relations Board had stepped in, and it was apparent that the Court was of the impression that all questions raised by the original Bill in Equity had become moot. Defendants' counsel apparently shared this view.

On November 18, 1952, the following Order was entered: "Now, November 18, 1952, the case being on the list when the case was called, it appears it is being disposed of except the costs, the Court being advised the costs being paid, the case is to be taken off the list."

On November 25, 1952, the foregoing order was rescinded because it was erroneously entered, the question of damages having not yet been adjudicated. The Court ordered the case down for hearing on November 28, 1952.

The attorney for the defendants having been lulled into a state of passivity by the order of August 21, 1952, failed to file his answer within 20 days and as a consequence the plaintiff asked for and obtained a decree pro confesso. On December 20, 1952, defendants' counsel presented a petition to open the decree pro confesso averring that the failure to file the pleading within 20 days was the result of counsel's oversight, misunderstanding or neglect, having been misled by a reading of the Court's order. A rule on this petition issued on January 19, 1953.

After many other pleadings and orders, none of which was conclusively or definitively disposed of, and

some of which invaded or contradicted others,* the Court on September 30, 1953, discharged the defendants' rule to show cause and set October 21, 1953, as the date for the hearing on the application of the plaintiff for assessment of damages, whereupon, the defendants appealed to this Court.

We are satisfied after an examination of the record that Equity demands the decree be opened and the defendants be allowed an opportunity to be heard on the merits of the controversy. Whether defendants' counsel was misled by the Court's order of August 21, 1952, or whether the many proceedings perplexed him to the degree that the last day for filing an answer passed by without his awareness, it is clear that the defendants should not be denied their day in Court. In *Pinsky v. Master*, 343 Pa. 451, this Court said: "It has long been a custom in Pennsylvania to grant relief from a judgment entered by default where the failure is due to a mistake or oversight of counsel and where application is promptly made and a reasonable excuse for the default offered."

It is now generally recognized throughout the United States that "An order or decree pro confesso may be vacated on a showing that the defendant has a meritorious defense and that, in failing sooner to

---

* As an illustration of the confusion that has vexed this case, reference is made to a Court Order filed on September 14, 1953: "We have just discovered that an answer was filed August 31, 1953 on behalf of the defendant *which was not delivered to us to be placed with the other papers,* and in this answer the averments that the National Labor Relations Board has taken jurisdiction in this case is denied or that this Court recognized the National Labor Relations Board had taken jurisdiction. That averment is also denied. No testimony having been taken, this being the return day, being satisfied the same questions being raised as originally disposed of on August 21, 1952"—the Court then entered an order discharging the rule." (Emphasis supplied)

present it, he has not been negligent or lacking in reasonable diligence. The tendency of the courts is to be indulgent in granting relief against pro confesso orders and decrees." (American Jurisprudence, Equity, Volume 19, Sec. 363, page 250.)

Although the appeal to this Court was taken in the name of all defendants, only one of the defendants (Baston LeBlanc) presented the petition to open the decree pro confesso. The other defendants, however, will have the right to intervene in all subsequent proceedings.

The plaintiff argues that the appeal should be quashed on the ground that the decree appealed from was prematurely entered and is not final, since damages have yet to be assessed. But the decree *is* final to the extent that it determines that the defendants have no right to plead any defense to the plaintiff's claim for damages. The decree conclusively declared that the defendants cannot be heard to refute their liability for damages. The mere fact that the decree leaves open the amount of damages to be ascertained does not make it any less final as to all other provisions of the decree.

The order of the court below is reversed, the decree is opened to let the defendants into a defense on the merits of the action. Costs to abide the event.