365 A.2d 147
**James T. FADGEN, Appellee,**
**v.**
**George LENKNER, Appellant.**

Supreme Court of Pennsylvania.
Argued March 8, 1976.
Decided Oct. 8, 1976.

---

274

Richard H. Martin, Pittsburgh, for appellant.

William C. Bartley, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

Appellee, James T. Fadgen, brought an action in trespass against appellant, George Lenkner, based upon the theory of criminal conversation. The complaint alleged that appellee and one Bonnie Hoch Fadgen were married in 1972 and that during the period of this marriage, the

appellant, without the consent of appellee Fadgen, criminally conversed with Ms. Fadgen. Pursuant to Rule 1037(c) of the Pennsylvania Rules of Civil Procedure, appellee moved the court below to enter judgment against appellant on the issue of liability based upon the latter's written admission that he had engaged in sexual intercourse with appellee's wife while the marriage continued.

The Court of Common Pleas of Allegheny County, Civil Division, sitting *en banc,* granted the appellee's motion for judgment upon admission.[1] Thereafter, George Lenkner appealed to the Superior Court which affirmed *per curiam,* 231 Pa.Super. 775, 331 A.2d 537. This appeal followed.

This Court last reviewed an action similar to the one presently at bar in 1959. In *Karchner v. Mumie,* 398 Pa. 13, 156 A.2d 537 (1959), the Court upheld a jury verdict in favor of the plaintiff-wife based upon the tort of criminal conversation where appellant-defendant had sought reversal on the ground that the cause of action as developed at common law was only available to married men as against an erring spouse's paramour.[2] The

---

1. The order of the court below is as follows:
   And Now, to wit, this 18th day of June, 1974, it is hereby ORDERED, ADJUDGED AND DECREED that defendant's Preliminary objections are hereby denied. It is FURTHER ORDERED, ADJUDGED AND DECREED that judgment on the issue of liability is granted in favor of the plaintiff and that such constitutes a final Order of this Court.
   And it is FURTHER ORDERED, ADJUDGED AND DECREED that all discovery in this case relating to the issues of damages be deferred pending appeal of the aforesaid Order of this Court."
   For the purposes of this appeal, we elect to treat the lower court's order as a certification of the question of whether or not the cause of action in trespass based upon the theory of criminal conversation retains vitality in light of modern legal and societal changes. *See* Act of 1970, July 31, P.L. 673, No. 223, Art. V, § 501(b), 17 P.S. 211.501(b).

2. For historical background on criminal conversation *see* Lippmann, *The Breakdown of Consortium,* 30 Col.L.Rev. 651, 654–660 (1930) [hereinafter referred to as "Lippmann"].

Court reasoned that the Married Women's Property Act of June 8, 1893, P.L. 344, *as amended* by the Act of May 17, 1945, P.L. 625, mandated the extension to married women of the right to bring such an action on their own behalf. *Id.* at pp. 15–17, 156 A.2d at pp. 538–39.

It is clear, however, that that first step directed towards fusing the ancient with the "modern" of 1959 was not sufficient revitalization such as to weather the rapid legal and societal changes witnessed over the past fifteen years. We might look back and well appreciate that, absent the benefit of attitudes reflected in the passage of the Equal Rights Amendment, the Court in 1959 nevertheless laudibly rejected the fictitious notion that a wife, like a servant, was the personal property (chattel as it were) of the husband and that an action in criminal conversation was a right sacrosanct to none but the master. Still, the Court's extension to married women of the right to bring such a cause of action only delayed what today demands; that is, the total abolition of a pious yet unrighteous cause of action.

Against the social background of the 18th century, Blackstone wrote,

> "Adultery or criminal conversation with a man's wife, though it is, as a public crime, left by our laws to the coercion of the spiritual courts; yet, considered as a civil injury (and surely there can be no greater) the law gives satisfaction to the husband for it by an action of trespass *ir et armis* against the adulterer; damages recovered are usually very large and exemplary."

3 Black Com. edited by Wendell 139 (1768).[3]

---

**3.** The ecclesiastic court alone had jurisdiction over the criminal counterpart of the action at common law based on criminal conversation; that is, the crime of adultery. Lippmann, *supra,* at p. 656. Today, adultery and the civil action in criminal conversation are still considered synonymous, the former vindicating the public proscription while the latter is seen as indicating a private right. *Karchner v. Mumie, supra; Cornelius v. Hambay,* 150 Pa. 359, 24 A. 515 (1892).

■■■ One of several civil actions directed at protecting against intentional interferences with the marital relationship,[4] criminal conversation comes closest in form to a strict liability tort. The cause of action is made out upon plaintiff's proof that while married to plaintiff, plaintiff's spouse and the defendant engaged in at least a single act of sexual intercourse without the consent of plaintiff. *Baldridge v. Matthews*, 378 Pa. 566, 568, 106 A.2d 809, 810 (1954); *Antonelli v. Xenakis*, 363 Pa. 375, 376, 69 A.2d 102 (1949); Restatement of Torts § 685 at p. 477 (1938). There are but two possible complete defenses to the action: one, obviously, is an outright denial by the defendant of having had any such relation with plaintiff's spouse; the other occurs upon proof that the *plaintiff* consented to the adulterous relation. Prosser, Law of Torts, § 124, at p. 879 (Fourth Ed. 1971); Restatement of Torts § 687, comments (a) and (b), at pp. 482–83 (1938). *See also Note*, Criminal Conversation, Civil Action for Adultery, 25 Baylor L.Rev. 495 at 497 (1973).

■■ It is no defense to the action, however, that the plaintiff's spouse consented nor in fact that the spouse was the aggressor or seducer. *Sieber v. Pettit*, 200 Pa. 58, 49 A. 763 (1901); *Durning v. Hastings*, 183 Pa. 210, 38 A. 627 (1897). As to the former, it was thought at common law that a wife was not competent to give her consent so as to defeat her husband's interest. *Tinker v. Colwell*, 193 U.S. 473, 483, 24 S.Ct. 505, 48 L.Ed. 754 (1903).[5] As to the justification for eliminating the de-

4. *See Note*, the Case for Retention of Causes of Action for Intentional Interference with the Marital Relationship, 48 Notre Dame Lawyer, 426, 427 (1972), wherein the author posits that statutory and judicial abolition of the tort actions known as "alienation of affections" and "enticement" is uncalled for and unfairly undermines the marriage institution. However, the author shows no like sympathy for criminal conversation. *Id.* at 433–34.

5. Prosser, citing 8 Holdsworth, History of English Law, 2d Edition 1937, 430, provides us with the following choice tidbit:

fense that the wife initiated and pursued the adulterous relationship, in addition to the belief at common law that she was incapable of prejudicing her husband's rights, the law burdensomely presuming the superiority of men over women chastized:

> "The man who breaks up the home of his neighbor by debauching his wife, rendering his children worse than motherless, is not excused because he is weak, and, being tempted by the woman, falls."

*Seiber v. Pettit,* 200 Pa. 58 at 67, 49 A. 763 (1901).

> " . . . it is but the old cowardly excuse set up by the first man, 'The woman gave me of the tree, and I did eat.' It did not save from the penalty the first defendant, and cannot, under the law, save this one."

*Id.* at p. 69, 49 A. at 765. *See also Tinker v. Colwell, supra; Durning v. Hastings,* 183 Pa. 210, 211–212, 38 A. 627 (1897). Such factors bearing on the issue of fault are not admissible except with reference to mitigating damages. *Matusak v. Kulezenski,* 295 Pa. 208, 145 A. 94 (1928); *Seiber v. Pettit,* 200 Pa. 58, 69, 49 A. 763 (1901); *Mathies v. Mazet,* 164 Pa. 580, 30 A. 434 (1894).[6] Moreover, a man could not plead ignorance of the marital status of the adulterer: "A man who has sexual relations with a woman, not his wife, assumes the risk that she is married. Even her misrepresentation that she is single affords the offender no defense to lia-

---

". . . it was considered that she was no more capable of giving a consent which would prejudice the husband's interests than was his horse." Prosser, *supra,* at 875.

6. Compare *Mission v. Grossman,* 329 Pa. 151, 152, 196 A. 494 (1938), setting forth proof previously demanded to make out an action for "alienation of affections" prior to the enactment of the Act of June 22, 1935, P.L. 450, § 1, *as amended* by Act of June 15, 1937, P.L. 2317, § 1, 48 P.S. § 170, which abolished civil causes of action for alienation of affections (except in certain cases not relevant here) as well as breach of promise to marry. *See also* Lippmann, *supra;* Prosser, Law of Torts, § 124 (Fourth Ed. 1971); *Note,* The Case for Retention of Causes of Action for Intentional Interference with the Marital Relationship, 48 Notre Dame Lawyer 426 (1972).

bility for criminal conversation. . . . " *Antonelli v. Xenakis, supra,* 363 Pa. at 378, 69 A.2d at 103.

We, of course, in no way condone sexual promiscuity and continue to hold the institution of marriage in the highest regard. However, the reasoning developed at common law behind stripping a defendant of all defenses to an action in criminal conversation, save the plaintiff's consent, no longer merits endorsement.

Damages alleged in an action for criminal conversation are compensatory, covering injury to the plaintiff's social position, disgrace in the community where he or she lives or was in business and dishonor to plaintiff and plaintiff's family. *Karchner v. Mumie, supra; Antonelli v. Xenakis, supra; DiSanti v. Cassidy,* 63 Pa.D. & C.2d 6 (1973). "And, a single act of adultery is sufficient to entitle the husband of the woman to damages in an action against the adulterer for criminal conversation even though the husband sustains no further loss: *Antonelli v. Xenakis, supra,* 363 Pa. at 377, 69 A.2d 102; Restatement, Torts, § 683, Comment c.; § 685, Comment b." *DiSanti v. Cassidy, supra,* 63 Pa.D. & C.2d at 9. Punitive damages have been held to be appropriate as well. *Joseph v. Naylor,* 257 Pa. 561, 101 A. 846 (1917) ; *Cornelius v. Hambay,* 150 Pa. 359, 24 A. 515 (1892); Lippmann, *supra,* at 656–57. Computations for the type of injury alleged here is always inexact and as Blackstone warned "usually very large and exemplary." This is so not only by virtue of the abstract nature of the injuries alleged but is further exacerbated by the emotion-laden nature of the proceedings. *See Note, supra,* n. 4, at 433–34; Greer, Criminal Conversation: Civil Action for Adultery, 25 Baylor L.Rev. 495, 499 (1973) [hereinafter referred to as "Greer"].

A variety of authorities have noted how seriously prone to abuse this sort of action is where "the threat of exposure, publicity, and notoriety is more than sufficient

▮▮▮▮▮▮▮

to breed corruption, fraud, and misdealings on the part of unscrupulous persons in bringing unjustified and maliicous [sic] suits." *Greer, supra,* at 500. Prosser succinctly summarizes:

"Those actions for interference with domestic relations which carry an accusation of sexual misbehavior—that is to say, criminal conversation, seduction, and to some extent alienation of affections—have been peculiarly susceptible to abuse. Together with the action for breach of promise to marry, it is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement. There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives; that it is impossible to compensate for such damage with what has derisively been called 'heartbalm'; that people of any decent instincts do not bring an action which merely adds to the family disgrace; and that no preventive purpose is served, since such torts seldom are committed with deliberate plan."

Prosser, *supra,* at 887 and authorities cited therein.

▮ We in no way intend to infer such motives on the part of the appellee in the instant case by pointing to the potential abuses to which this action is susceptible. However, we believe the cause of action itself is an anachronism [7] and that in today's society it is unreasona-

7. Under our new Crimes Code, the Pennsylvania legislature has seen fit to abolish the crime of adultery, serving to decriminalize the very behavior upon which an action in criminal conversation rests. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. 101 *et seq.*

[The anomaly presents itself that the plaintiff's spouse, under the eyes of the law, is guilty of nothing and liable to no one but him or herself, raising possible Equal Protection problems.]

To date, ten states have adopted statutes abolishing the cause of action for criminal conversation entirely: Ala.Code Tit. 7, 115 (1960); Cal.Civ.Code 43.5 (West's 1954); Colo.Rev.Stat.Ann. 41–

ble to impose upon a defendant such harsh results without affording any real opportunity to interject logically valid defenses on the merits such as the role of the plaintiff's spouse in the adulterous relationship or the quality of the plaintiff's marriage prior to the occurrence of the acts constituting the tort.

The total abolition of this cause of action is well within the bounds of our judicial powers. In fact, it is our duty to so act with regard to court-made rules where "reason and a right sense of justice recommend it." *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 600, 305 A.2d 877, 885 (1973) ; *Falco v. Pados,* 444 Pa. 372, 382, 282 A.2d 351, 356 (1971). *Cessante ratione legis, cessat et ipsa lex. Commonwealth v. Ladd,* 402 Pa. 164, 174–175, 166 A.2d 501, (1960); *Appeal of Cummings,* 11 Pa. 273, 276 (1948). Appellee admits that there is no vested right in the continued recognition of all causes of action, *Munn v. Illinois,* 94 U.S. 113, 134, 24 L.Ed. 77 (1876) ; [8] however, it is argued that the doctrine of *stare decisis,* which advances precedent for the

3–1 (1964); Conn.Gen.Stat.Ann. § 52–572f (1971); Fla.Stat.Ann. 771.01–07 (1964); Ind.Ann.Stat. 2–508 (1967); Mich.Comp.Laws 551.301 (1967); N.J.Rev.Stat. 2A:23–1 (1952); N.Y.Civ.Rights Law 80–A (McKinney Supp.1970); Wyo.Stat.Ann. 1–728 (1959). *See also* Ill.Rev.Stat. Ch. 68 §§ 41–44 (limiting damages, although the action is not abolished); *Henley v. Rockett,* 243 Ala. 172, 8 So.2d 852 (1942) (modifying the cause of action as it existed at common law).

8. We recently approved this principle in *Singer v. Sheppard,* 464 Pa. 387, 346 A.2d 897 (1975), wherein we quoted at length from *Jackman v. Rosenbaum Co.,* 263 Pa. 158, 175, 106 A. 238, 244 (1919), *aff'd* 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922):
" 'The fundamental principles of the common law, while liable to expansion, are in essence unchangeable, but their applicability to given conditions necessarily varies according to changes wrought by usage or statutory enactment; and, pursuing this thought, *what today is a trespass, may, by development of law, not be so tomorrow.* Therefore, it will not do to say (as plaintiff does), since, once upon a time, at common law [an event] would have been a tort, giving rise to a claim for damages . . . [when], under present conditions, the law views [the events] as constituting no wrongful . . . act.' " *Singer, supra,* at 399, 346 A.2d at 903.

sake of certainty in cases factually similar, prevents our action today. We disagree.

We have often stated that while the principle of *stare decisis* is a wise course of judicial action, it is not an ironclad rule and is to be controlling only where applicable. So that, when it is determined that a past precedent is no longer in accord with modern realities, and the rationale justifying the old rule no longer finds support, then the pledge to certainty gives way "to new conditions and to the persuasion of superior reasoning." *Griffith v. United Air Lines*, 416 Pa. 1, 23, 203 A.2d 796, 806 (1964). As we said in *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965), quoting Justice Cardozo:

> " '[W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. . . . There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and *particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years.*' " (Emphasis added).

*Id.* at 514, 208 A.2d at 207.

> " 'Precedent speaks for the past; policy for the present and the future. The goal which we seek is a blend which takes into account in due proportion the wisdom of the past and the needs of the present.' "

*Ayala v. Philadelphia Board of Public Education, supra,* 453 Pa. at 603–04, 305 A.2d at 887.[9]

---

9. For a listing of cases in which this Court has abandoned outmoded common law doctrines, *see also, Ayala, supra,* 453 Pa. at 605–06, 305 A.2d at 888.

The Order of the court below is vacated and the case remanded for the entry of judgment in favor of the appellant. The civil cause of action based upon the tort of criminal conversation is hereby abolished.

Each party to bear own costs.

NIX, J., joins the majority opinion and also joins the concurring opinion filed by MANDERINO, J.

MANDERINO, J., filed a concurring opinion.

ROBERTS and POMEROY, JJ., filed dissenting opinions.

MANDERINO, Justice (concurring).

I concur in the result reached by the majority opinion because I believe that result mandated by the decisions of the United States Supreme Court in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), in which the court held that the right of privacy was broad enough to preclude interference by the state in a woman's decision whether or not to terminate her pregnancy, and in *Cleveland Board of Education v. La Fleur,* 414 U. S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974). In the latter case the court stated its recognition " . . . that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Id.* at 639, 94 S.Ct. at 796, 39 L.Ed.2d at 60. If a married man or woman chooses to engage in sexual activity with one other than his or her spouse, I believe such a choice is protected by the right to privacy guaranteed by the Constitution and there is no "compelling state interest" involved which would justify the state's limiting the exercise of such rights. See *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). The majority opinion amply illustrates the extent of the state's past limitations on the free exercise of

284

this right. See also *Doe v. Bellin Memorial Hospital,* 479 F.2d 756 (7th Cir. 1973), in which the court held that a woman's right to decide to secure an abortion was personal and not conditioned on the consent of the putative father.

I also comment on the dissenting opinion of Mr. Justice Roberts. By "abolishing" the cause of action for criminal conversation, the majority at last recognizes that one's spouse no longer suffers a compensable injury when the other engages in sexual activity outside the marriage relationship. Such a recognition is long overdue. In fact, I believe that were we to apply Mr. Justice Roberts' three part inquiry the result would be the same: (1) society no longer has any interest in protecting one spouse against extramarital sexual activity by the other; (2) since there is no longer any interest to protect, there has been no invasion of such interest; and (3) no injury has resulted.

As to the question raised by Mr. Justice Pomeroy of the appealability of the order of the trial court, I quote from *Clearfield Cheese Co. v. United Stone and A. Prod. Workers,* 378 Pa. 144, 149, 106 A.2d 612, 614–615 (1954):

> "the decree *is* final to the extent that it determines that the defendants have no right to plead any defense to the plaintiff's claim for damages. The decree conclusively declared that the defendants cannot be heard to refute their liability for damages. The mere fact that the decree leaves open the amount of damages to be ascertained does not make it any less final on all other provisions of the decree."

*Id.* at 149, 106 A.2d at 614–615.

NIX, J., joins in this concurring opinion.

ROBERTS, Justice (dissenting).

I dissent. The majority totally abolishes the cause of action for criminal conversation without any statutory or

any other authority for doing so other than its own inclinations that the tort is an "anachronism."[1]  I cannot agree that the marital relationship—which has been protected in this Commonwealth for more than two centuries—is no longer deserving of the protection of our law.

The majority devotes much of its discussion to the history of this cause of action.  Whether a wife was once regarded as the property of her husband is irrelevant. The action is now equally available to a husband or wife. *Karchner v. Mumie*, 398 Pa. 13, 156 A.2d 537 (1959). Furthermore, the basis of the action is not the protection of property rights, but the protection of conjugal rights. Cf. *Karchner v. Mumie*, supra; *Long v. Booe*, 106 Ala. 570, 17 So. 716 (1895).

Respected authorities on the law of torts have noted that "[t]he interests involved in the familial relationship are among the most delicate and most important in our society."  F. Harper & F. James, 1 The Law of Torts (1956 ed.) § 8.1, at 606.  Surely an action for criminal conversation is a legitimate remedy for invasion of the familial relationship.

Professor Prosser has articulated what the law of torts embodies:

> "So far as there is [a guiding principle], it would seem that liability must be based upon conduct which is socially unreasonable.  The common thread woven into all torts is the idea of unreasonable interference with the interests of others."

W. Prosser, Law of Torts (1971 ed.) § 1, at 6.  Our society still considers it "socially unreasonable" for one person to have sexual relations with the spouse of another. Nor can it be said that the law is unable to provide a remedy for the invasion of the marital interest.

---

1.  The majority's reliance on cases in other jurisdictions where the cause of action was abolished by the Legislature lends no support for judicially abolishing the cause of action in this Commonwealth.

The majority concludes that this cause of action has not been able to "weather the rapid legal and societal changes witnessed over the past fifteen years." I know of no case during the past fifteen years—or at any time—where this Court has abolished a cause of action in tort. Moreover, in *Karchner*, supra, this Court effectively expanded the availability of the cause of action. I know of no societal changes since then that support the majority's conclusion that the familial interest is no longer worthy of protection by the courts of this Commonwealth.

The majority's reliance on cases where we have abolished immunities to tort actions is inapposite here. Indeed, in those cases we removed immunities so that actions can be brought. In none of these cases did we abolish a cause of action.

Nor is it persuasive that the Legislature omitted adultery from the new Crimes Code. The Legislature deemed it advisable to abolish only the criminal action and not to abolish the correlative tort, as was done in certain other states. Society may not have a sufficient interest in prosecuting this activity but individuals may indeed still have an interest worthy of vindication in a civil action. It may well be that the new Crimes Code creates even greater justification for the tort of criminal conversation, since a wronged spouse now has only a civil remedy and can no longer be vindicated through society's exercise of the criminal sanction.

Even if, as the majority believes, certain facts should be defenses to the action, there is no justification for abolishing the entire cause of action. First, our legal system is capable of ascertaining, instituting and applying those defenses to an action which are worthy of judicial recognition. But we are not now presented with an argument for enlarging available defenses. Second, mechanisms presently exist which are capable of lessen-

ing the potential harshness of this tort in particular cases.[2]

In sum, the majority's conclusion is not supported by its premises. There is no authority for judicially extinguishing a cause of action, and the majority's discussion of the history of the tort and available defenses is not relevant to the real inquiry involved when an entire cause of action is attacked.

The true inquiry here should be: (1) Is there an interest which society should protect? (2) Has there been an invasion of that interest which cannot be excused or justified? (3) Has the invasion produced an injury for which the law can provide a remedy?

The first inquiry has been answered in the affirmative for more than two hundred years. Whether the interest is no longer worthy of protection is a public policy decision only the Legislature should make. Since a legally protected interest exists and an invasion of that interest has been admitted in this case, the trial court should determine whether the invasion can be excused or justified. Likewise, the trial court should determine whether the injury sustained is one for which the court should provide a remedy.

The judgment on that issue of liability should be affirmed and the case remanded to the trial court for a determination of damages.

POMEROY, Justice (dissenting).

2. The majority itself points out that evidence that plaintiff's spouse consented to the relationship or that the spouse was the aggressor and seducer is admissible with reference to mitigating damages. The jury, then, through its award of damages can be expected to ensure that defendant's liability corresponds to the degree of his culpability.

Furthermore, indemnification should be available where the spouse misrepresents her marital status to the liable party. Cf. Restatement (Second) of Torts, ch. 44, 886B(2)(c) (Tent. Draft No. 18, 1972).

In its eagerness and haste to do away with the tort of criminal conversation, which "from time immemorial" [1] has been part of the law of this Commonwealth, the Court today ignores well settled principles of appellate jurisprudence. It does so by condoning, instead of setting aside, a decision on its merits by the Superior Court of a purported appeal from an unappealable order. The Court then proceeds to compound the error of the Superior Court by itself entertaining and deciding this case on its merits. I respectfully dissent.

The defendant took his appeal to the Superior Court from a summary judgment in favor of the plaintiff, sought and obtained by plaintiff under Rule 1035 of our Rules of Civil Procedure, establishing defendant's liability for criminal conversation. Rule 1035(b) of the Rules expressly states that a summary judgment rendered on issues of liability alone, as in this case, is "interlocutory in character." This provision of the rule is consistent with our case law, which has defined a final order as an order which puts one of the parties out of court. See, *e. g., Ventura v. Skylark Motel, Inc.,* 431 Pa. 459, 246 A.2d 353 (1968); *Posternack v. American Casualty Co. of Reading,* 421 Pa. 21, 218 A.2d 350 (1966); *McGee v. Singley,* 382 Pa. 18, 114 A.2d 141 (1955). Appellant, however, has not yet been put out of court, for trial on the issue of damages remains to be had. Although the trial court in the text of its order described it as a "final order," the order is clearly interlocutory; the court could not imbue it with finality simply by calling it final.

As a general rule, the appellate courts of Pennsylvania have jurisdiction of appeals only from *final* orders of the courts below.[2] Thus, as we have often said, interlocutory

1. *Cornelius v. Hambay,* 150 Pa. 359, 362, 24 A. 515 (1892).

2. See, *e. g.,* Sections 202, 203, 204(a), 302, and 402 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, §§ 202, 203, and 204(a), art. III, § 302, and art. IV § 402, 17 P.S. §§ 211.202, 211.203, 211.204(a), 211.302, and 211.402 (Supp.1976).

orders or judgments are appealable only if made so by statute or general rule.[3] *P. Agnes, Inc. v. Philadelphia Police Home Ass'n,* 439 Pa. 448, 266 A.2d 696 (1970); *Ventura v. Skylark Motel, Inc., supra; Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Co.,* 419 Pa. 170, 213 A.2d 366 (1965). Since there is no statute or general rule which authorizes appeals from the granting of partial summary judgment, the order of the court of common pleas is not appealable, and appellant's appeal to the Superior Court should have been quashed. See *Liberty Mutual Insurance Company v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).[4]

By requiring that all issues arising from a single law suit be reviewed in a single appeal, the rule of non-appealability of interlocutory orders and judgments serves the salutary purposes of promoting judicial economy in our appellate courts and of avoiding the protraction of litigation in our trial courts which would result from the allowance of multiple appeals. See *Adcox v. Pennsylvania Manufacturers' Association Casualty Insurance Co., supra; Sullivan v. Philadelphia,* 378 Pa. 648, 107 A.2d 854 (1954). It is recognized, however, that there can occasionally be cases in which the considerations supporting the general rule of nonappealability are outweighed by the need for a speedy determination of a legal issue the resolution of which is in doubt and upon which the

3. See, *e. g.,* the Act of February 14, 1866, P.L. 28, § 1, 12 P.S. § 1101, which permits appeals from orders granting preliminary injunctions; the Act of June 12, 1879, P.L. 177, § 1, 12 P.S. § 1102, which allows appeals from orders denying preliminary injunctions; and the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, which provides that orders determining questions of the lower court's jurisdiction are appealable. See also the statutes listed in Note to Rule 311, of the Pennsylvania Rules of Appellate Procedure, adopted November 5, 1975, effective July 1, 1976.

4. In *Wetzel* the Supreme Court of the United States held that an order granting partial summary judgment on the issue of liability pursuant to Federal Rule of Civil Procedure 56(b), upon which Rule 1035(b) of our rules is based, is not a final order within the meaning of 28 U.S.C. § 1201.

course of the proceedings in the trial court depends. Accordingly, provision is made for permissive appeals in such cases by Section 501(b) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 501(b), 17 P.S. § 211.501(b) (Supp.1976), which provides in pertinent part:

> "When a court or administrative agency, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such order." [5]

Footnote 1 of the majority opinion notwithstanding the order granting the appellee's motion for summary judgment on the issue of liability does not meet the requirements of Section 501(b). The trial court did not certify that determination of the issue of liability "involves a controlling question of law as to which there is substantial ground for difference of opinion" or that "an immediate appeal from the order may materially advance the ultimate termination of the matter"; it made no certification of any sort. Moreover, the appellant did not petition the Superior Court for a discretionary allowance of appeal, and the Superior Court never entered an order allowing the appeal. *See* Superior Court Rule 53. Appellant and the courts below have at all times treated the order of the court of common pleas as a "final order" from which appellant was entitled, to appeal as a matter of right. In so doing, they were plainly mistaken, and I

---

5. Procedure under this section is now set forth in Chapter 13 of the Pennsylvania Rules of Appellate Procedure, adopted November 5, 1975, effective July 1, 1976.

cannot agree that this Court should ignore the error by pretending that an order which clearly does not comply with Section 501(b) of the Appellate Court Jurisdiction Act, *supra,* does in fact do so. (See footnote 1 of the opinion of the court, *ante* at 148).

Because under the circumstances the Superior Court lacked jurisdiction in the premises, I would vacate the order of that court and quash the appeal as having been brought from an interlocutory order.