## JACKMAN *v.* ROSENBAUM COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF PENN-
SYLVANIA.

. No. 3. Argued October 4, 1922.—Decided October 23, 1922.

1. The fact that a practice is of ancient standing in a State is a
   reason for holding it unaffected by the Fourteenth Amendment.
   P. 31.
2. Under a statute of Pennsylvania, following an old custom whereby
   adjoining lots are subject to party-wall servitudes, plaintiff's wall,
   which was built to the line, was torn down by the adjoining owner
   (being unsuitable for incorporation in a new one), and a party
   wall of reasonable width was erected on the line. *Held,* that due
   process of law did not require that he be repaid for necessarily
   incident damages. P. 30.

263 Pa. St. 158, affirmed.

ERROR to a judgment of the Supreme Court of Penn-
sylvania, affirming a judgment for the defendant in an
action brought by the plaintiff in error for damages re-
sulting from the destruction of a wall of his building and
its replacement by a party wall, by the defendant, pro-
ceeding under a statute of Pennsylvania of June 7, 1895,
P. L. 135, § 9.[1]

---

[1] This act provides for a bureau of building inspection in cities of
the second class.

Anyone about to erect a party wall shall apply to the bureau,
describing his property and furnishing plans and specifications of the
party wall he desires to erect. The bureau then fixes a time for a
meeting on the ground, notice of which shall be served on the
adjoining owner. At the time appointed, the superintendent of the
bureau, " or some suitable person by him appointed," shall have the
line between the two parties surveyed and also " the land upon
which the said party wall is to be erected, with the breadth and
length of the same, and which wall shall be equally one-half upon the
land of each of the adjoining owners, unless the adjoining owners shall

*Mr. H. F. Stambaugh,* with whom *Mr. Ernest C. Irwin* and *Mr. John M. Freeman* were on the brief, for plaintiff in error.

The declaration of the court below that the Act of 895 is a valid exercise of the police power, does not preclude this Court from determining for itself whether the act, as interpreted by the state court, violates the Fourteenth Amendment.

The act deprives an owner of his property without due process of law, because it affords him no hearing on the question whether his property shall be occupied, and grants no compensation for property actually taken.

The right given by the act to an owner to occupy a portion of his neighbor's land is absolute. The decision rests entirely with him, no matter how unsuitable or ruinous the proposed party wall may be to the adjoining owner, or how strong and just the latter's protest. If the first owner elects to build a party wall, the requirement of the statute is satisfied. There is no hearing on this

object that said wall as proposed is thicker than necessary for the purpose of any ordinary building. If such objection shall be made, then the superintendent, or the person by him appointed, shall determine how much of said wall shall be placed upon each of said lots and shall decide the same within forty-eight hours after the said objection has been made, and his decision shall be final and conclusive upon all parties."

The party first applying shall erect the wall at his own cost, which, and the proportions to be paid by each owner, shall be determined by the superintendent, or his agent; the adjoining owner shall not thereafter use the wall for any new structure until he has paid his proper proportion, as fixed.

The question of necessary alterations and repairs in existing walls shall also be referred to and determined by the superintendent and he may order an old party wall torn down and a new one erected and fix the proportion of the cost which each of the adjoining owners shall pay. The courts are given power to restrain the adjoining owner from making any new use of the wall until his proportion of the costs, as fixed by the superintendent, has been paid.

question, and no official or court may hear or determine what is fair and just.

If the adjoining owner objects that the proposed wall is " thicker than necessary for the purpose of any ordinary building ", the superintendent has the discretion to determine " how much of said wall shall be placed upon each of said lots." The act does not direct him to determine what would be one-half the thickness of a wall necessary for any ordinary building. He can allow any portion up to one-half of the party wall to be placed upon the adjoining lot. As to what is " any ordinary building," and how much of the wall he shall allow to be put over the line, the statute prescribes no rule or standard to be applied by him in fixing the rights of the parties. Under the statute, his decision is " final and conclusive."

There is plainly a permanent occupation and appropriation of a substantial portion of the adjoining owner's land, for which the act provides no compensation. *Chicago, Burlington & Quincy R. R. Co.* v. *Chicago,* 166 U. S. 226; *McCoy* v. *Union Elevated R. R. Co.,* 247 U. S. 354, 363; *Backus* v. *Fort Street Union Depot Co.,* 169 U. S. 557, 565; *Fayerweather* v. *Ritch,* 195 U. S. 276–279, 298; *Sweet* v. *Rechel,* 159 U. S. 380; *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403, 417.

The police power does not authorize the taking of private property without compensation.

Under the act, as construed by the court below, no question of necessity for the taking, or of the suitability of the proposed party wall, or of the economy to be gained by its construction, or of the relative benefit to the owner who builds and the detriment to his neighbor, can be raised.

This power is as absolute as the power of eminent domain. The taking is at least for the life of the building which the first owner wishes to build, and is of a substantial portion of the adjoining property. In the case

at bar the foundation is projected 7½ feet onto the plaintiff's land, extending throughout the entire length of his lot, and downward 33 feet below the curb.

If the statute authorizes this, it equally authorizes occupation of a larger strip—a quarter or a half of the adjoining lot. Party walls may be built on both sides of the lot and have an equal width.

In *Wilkins* v. *Jewett,* 139 Mass. 29, a provincial statute, providing that anyone building in Boston might set half his partition wall on his neighbor's land, was held to be not in force in Massachusetts because of its unconstitutionality. See also *Traute* v. *White,* 46 N. J. Eq. 437; *Schmidt* v. *Lewis,* 63 N. J. Eq. 565; *Brooklyn Park Commissioners* v. *Armstrong,* 45 N. Y. 234; *Philadelphia* v. *Scott,* 81 Pa. St. 80.

This is not a case where the doctrine *sic utere tuo* justifies the taking or restriction of property rights without compensation. *Matter of Cheesebrough,* 78 N. Y. 232; *Vreeland* v. *Forest Park Comm.,* 82 N. J. Eq. 349; *McKeon* v. *Railroad Co.,* 75 Conn. 343; *Matter of Rapid Transit,* 197 N. Y. 81; *Bent* v. *Emery,* 173 Mass. 495; *Parker* v. *Commonwealth,* 178 Mass. 199; *Mt. Hope Cemetery* v. *Boston,* 158 Mass. 509.

Even when property is destroyed as a nuisance, and by state officials, the right to a jury trial on the question whether or not it actually constituted a nuisance is preserved to the owner. *Frank* v. *Talty,* 72 Ga. 428; *Verder* v. *Ellsworth,* 59 Vt. 354; *Loesch* v. *Koehler,* 144 Ind. 278; *Miller* v. *Horton,* 152 Mass. 540.

Without plaintiff's consent, the defendant came upon plaintiff's property, which was being operated as a theatre and rented at the rate of $40,000 a year. The building was rendered untenantable, became vacant and remained so for many months. The defendant tore out one side of the building, erected a dust screen twelve feet back from the line, and destroyed the plumbing, electric wiring,

decorations, etc., on that side, causing damage which it cost nearly $20,000 to repair.

Under the police-power, the use of property can be regulated or restricted for the benefit of the community at large only, but not in the interest of a private individual or class. *Eubank* v. *Richmond*, 226 U. S. 137.

The statute not only authorizes an owner to determine the use which his neighbor can make of his property, but authorizes him to occupy it himself and prevent the neighbor from using it as he wishes. It confers on one owner the power virtually to control and dispose of the property rights of another. It creates no standard whatever by which this power may be exercised, i. e., no standard to determine the kind of a party wall, or the conditions, under which it may be erected, or the amount of the neighbor's land which it may occupy. As this Court said in the *Eubank Case, supra,* the statute " enables the convenience or purpose of one set of property owners to control the property rights of others." Cf. *Missouri Pacific Ry. Co.* v. *Nebraska,* 217 U. S. 196; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Oregon Railroad & Navigation Co.* v. *Fairchild,* 224 U. S. 510.

The act is not a regulation in the interest of the public safety, health, morals or convenience.

An authoritative statement of the history of party-wall legislation and its purpose in England appears in Gibbons, Law of Dilapidations & Nuisances, 1st ed., (1838):

" The object of the statute is to prevent fire, and for that purpose it provides for the more effectual separation of houses by party walls, and was certainly not intended to encourage close and contiguous buildings. . . . This enactment strongly shows that it was not the intention of the legislature to authorize an encroachment by one person on the land of another; and the only case to which the Fourteenth Section can apply is where two houses, having a common party wall, are pulled down and rebuilt, and a new party wall built." (P. 110.).

In speaking of the statute 14 Geo. III, c. 78, Gibbons says (2d ed., p. 262), that "It did not confer any authority to one man to build half the side wall of his house on his neighbour's land." Cf. *Traute* v. *White,* 46 N. J. Eq. 437.

The early statutes in Pennsylvania likewise regulated the safety of party walls built by mutual agreement and did not authorize one owner to occupy the land of another without consent.

Section 9 of the Act of 1895 contains no requirement as to the strength, thickness or materials to be used in party walls, or that the builder do anything to make the wall safe. The same is true of the earlier Act of 1872, P. L. 986. These statutes merely authorize one owner to build a wall partly upon the land of his neighbor.

Other legislation regulates the strength and character of walls generally to be built in the City of Pittsburgh; but there is no requirement in any statute that a party wall be of a different or better construction or material than any other kind of wall. Cf. *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531.

The act, as construed by the court below, is an unreasonable exercise of the police power. No common-law right to erect a party wall partly upon another's land, without his consent, is recognized in Pennsylvania or elsewhere. *Hoffstot* v. *Voight,* 146 Pa. St. 632; *Shell* v. *Kemmerer,* 13 Phila. 502; *Whitman* v. *Shoemaker,* 2 Pears. 320; *Report of the Judges,* 3 Binn. 595 (1808); Jones, Easements (1898), § 641; Washburn, Easements, 2d ed., p. 550; *Sherred* v. *Cisco,* 4 Sanford, 480; *Boch* v. *Isham,* 7 Am. L. R. (N. S.) 8, note; Pingrey, Real Property, § 250; *Sanders* v. *Martin,* 2 Lea, 213; *Spalding* v. *Grundy,* 126 Ky. 510; *List* v. *Hornbrook,* 2 W. Va. 340.

In England, there never has been a compulsory proceeding to erect a party wall, where no wall existed before. 19 Charles II, c. 3; 6 Anne, c. 31; 7 Anne, c. 17;

11 Geo. I, c. 28; 33 Geo. II, c. 30; 4 Geo. III, c. 14; 6 Geo. III, c. 27; 12 Geo. III, c. 73; 14 Geo. III, c. 78; *Barlow* v. *Norman,* 2 Wm. Blackstone, 959.

Under these acts compensation was allowed to the adjoining owner for consequential damages caused by the raising of a party wall. *Wells* v. *Ody,* 32 Eng. C. L. Rep. 560; *Titterton* v. *Convers,* 5 Taunt. 465; *Reg.* v. *Ponsford,* 7 Jur. Part 1, p. 767; Metropolitan Building Act, 1855, 18 & 19 Vict., c. 122; *Crofts* v. *Haldane,* 8 B. & S. 194; *Weston* v. *Arnold,* 43 L. J., N. S. 123; Gibbons, Law of Dilapidations and Nuisances, *supra.* In *Thompson* v. *Hill,* 22 L. T. Rep. 820, and *Bryer* v. *Willis,* 23 L. T. Rep. 463, the existing party walls were not in compliance with the building act.

The declaration of the court below that the act is a settled rule of property in Pennsylvania, does not conclude the rights of the plaintiff under the Fourteenth Amendment in this Court. This Court must examine and determine that question for itself.

The decision of the Supreme Court of Pennsylvania, relied upon, was rendered after the plaintiff acquired his property and his rights therein had accrued. *Kuhn* v. *Fairmont Coal Co.,* 215 U. S. 349; *Burgess* v. *Seligman,* 107 U. S. 20.

A single decision of the highest court of the State is not conclusive evidence of the law of the State and does not establish a settled rule of property which this Court must follow. *Barber* v. *Pittsburgh, Ft. Wayne & Chicago Ry. Co.,* 166 U. S. 83; *Ryan* v. *Staples,* 76 Fed. 721; *Chicago* v. *Robbins,* 2 Black, 418.

No settled rule of property permitting an owner to occupy the land of his neighbor, without compensation, can be found in the statutes or decisions of Pennsylvania. *Heron* v. *Houston,* 217 Pa. St. 1, is the first case where one party sought to compel the erection of a new party wall against his neighbor's protest. The question of

damages to the adjoining owner was never decided in the State prior to the decision in this case.

The statutory right to build a party wall partly upon another's land is in derogation of common-law rights and is to be strictly construed.

If it be conceded (which we deny) that the statutes give an owner an unassailable right to enter upon an adjoining lot to erect a party wall, still these statutes do not deny the adjoining owner the right to compensation.

*Mr. A. Leo Weil,* with whom *Mr. J. Smith Christy* was on the brief, for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The plaintiff in error, the original plaintiff, owned a theatre building in Pittsburgh, Pennsylvania, a wall of which went to the edge of his line. Proceeding under a statute of Pennsylvania, the defendant, owner of the adjoining land, began to build a party wall, intending to incorporate the plaintiff's wall. The city authorities decided that the latter was not safe and ordered it to be removed, which was done by the contractor employed by the defendant. The plaintiff later brought this suit. The declaration did not set up that the entry upon the plaintiff's land was unlawful, but alleged wrongful delay in completing the wall and the use of improper methods. It claimed damages for the failure to restore the plaintiff's building to the equivalent of its former condition, and for the delay, which, it was alleged, caused the plaintiff to lose the rental for a theatrical season. At the trial the plaintiff asked for a ruling that the statute relating to party walls, if interpreted to exclude the recovery of damages without proof of negligence, was contrary to the Fourteenth Amendment. This was refused, the Court ruling that the defendant was not liable for damages

necessarily resulting from the exercise of the right given by the statute to build a party wall upon the line, and, more specifically, was not liable for the removal of the plaintiff's old wall. There were further questions as to whether the work was done by an independent contractor and as to negligence, on which the jury brought in a verdict for the plaintiff for $25,000; but the Court of Common Pleas held that the party employed was an independent contractor and that the defendant was entitled to judgment *non obstante veredicto.* The Supreme Court affirmed the judgment, holding among other things that the statute imposed no liability for damages necessarily caused by building such a party wall as it permitted, and that, so construed, it did not encounter the Fourteenth Amendment of the Constitution of the United States. 263 Pa. St. 158.

In the State Court the judgment was justified by reference to the power of the State to impose burdens upon property or to cut down its value in various ways without compensation, as a branch of what is called the police power. The exercise of this has been held warranted in some cases by what we may call the average reciprocity of advantage, although the advantages may not be equal in the particular case. *Wurts* v. *Hoagland,* 114 U. S. 606; *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112; *Noble State Bank* v. *Haskell,* 219 U. S. 104, 111. The Supreme Court of the State adverted also to increased safety against fire and traced the origin to the great fire in London in 1666. It is unnecessary to decide upon the adequacy of these grounds. It is enough to refer to the fact, also brought out and relied upon in the opinion below, that the custom of party walls was introduced by the first settlers in Philadelphia under William Penn and has prevailed in the State ever since. It is illustrated by statutes concerning Philadelphia going back to 1721; 1 Dallas, Laws of Pennsylvania, 152; and by an

Act of 1794 for Pittsburgh, 3 Dallas, Laws, 588, 591, referring to the Act incorporating the borough of Reading. 2 Dallas, Laws, 124, 129.

The Fourteenth Amendment, itself a historical product, did not destroy history for the States and substitute mechanical compartments of law all exactly alike. If a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it, as is well illustrated by *Ownbey* v. *Morgan*, 256 U. S. 94, 104, 112. See *Louisville & Nashville R. R. Co.* v. *Barber Asphalt Co.*, 197 U. S. 430, 434. Such words as "right" are a constant solicitation to fallacy. We say a man has a right to the land that he has bought and that to subject a strip six inches or a foot wide to liability to use for a party wall therefore takes his right to that extent. It might be so and we might be driven to the economic and social considerations that we have mentioned if the law were an innovation, now heard of for the first time. But if, from what we may call time immemorial, it has been the understanding that the burden exists, the land owner does not have the right to that part of his land except as so qualified and the statute that embodies that understanding does not need to invoke the police power.

Of course a case could be imagined where the modest mutualities of simple townspeople might become something very different when extended to buildings like those of modern New York. There was a suggestion of such a difference in this case. But, although the foundations spread wide, the wall above the surface of the ground was only thirteen inches thick, or six and a half on the plaintiff's land, and as the damage complained of was a necessary incident to any such building, the question how far the liability might be extended does not arise. It follows, as stated by the Supreme Court of Pennsylvania that "when either lot-owner builds upon his own prop-

erty up to the division line, he does so with the knowledge that, in case of the erection of a party wall, that part of his building which encroaches upon the portion of the land subject to the easement will have to come down, if not suitable for incorporation into the new wall." In a case involving local history as this does, we should be slow to overrule the decision of Courts steeped in the local tradition, even if we saw reasons for doubting it, which in this case we do not.

*Judgment affirmed.*