382 A.2d 715

**FREEZER STORAGE, INC., a corporation, Appellant,**

v.

**ARMSTRONG CORK COMPANY, a corporation, and Acands, Inc., a corporation.**

Supreme Court of Pennsylvania.

Argued May 3, 1976.

Decided Jan. 26, 1978.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, for appellant.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Ronald W. Frank, Robert J. Pfaff, Egler & Reinstadtler, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Freezer Storage, Inc. (Freezer Storage) challenges the constitutionality of a statute limiting the liability of all persons "lawfully performing or furnishing the design, planning, supervision or observation of construction, or con-

struction of [an improvement to real property]."[1]  Act of December 22, 1965, P.L. 1183, § 1, 12 P.S. § 65.1 (Supp.1977).[2] The Act of 1965 provides that, except in specified circumstances, all actions against such persons for deficiencies in

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204, 17 P.S. § 211.204 (Supp.1977).

2. The Act of 1965 provides:
"§ 65.1 Twelve years
No action (including proceedings) whether in contract, in tort or otherwise, to recover damages:
(1) For any deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,
(2) For injury to property, real or personal, arising out of any such deficiency,
(3) For injury to the person or for wrongful death arising out of any such deficiency, or
(4) For contribution or indemnity for damages sustained on account of any injury mentioned in clauses (2) and (3) hereof shall be brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of such improvement more than twelve years after completion of such an improvement.
§ 65.2 Injury, twelfth year after improvement completed
Notwithstanding the provisions of section [65.1], in the case of such an injury to property or the person, or such an injury causing wrongful death, which injury occurred during the twelfth year after such completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years after the date on which such injury occurred: Provided, That in the case of wrongful death, such action shall also be brought within one year of the date of death.  In no event, however, may any of such actions be brought more than fourteen years after the completion of construction of such an improvement.
§ 65.3 Extending limitation periods
Nothing in this act shall be construed as extending the period prescribed by the laws of this Commonwealth for the bringing of any action.
§ 65.4 Defense by person in possession or control of improvement
The limitation prescribed by this act shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action.
§ 65.5 Definitions
As used in this act, the term 'person' shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, professional association or joint stock company."

their work must be brought within twelve years after the completion of the improvement. Appellant argues that this statute conflicts with the Constitution of Pennsylvania because (1) it is special legislation violating Article III, Section 32 of the Constitution; (2) it closes the courts to one who has suffered an injury, in violation of Article I, Section 11 of the Constitution; and (3) it limits the amount which may be collected for an injury, in violation of Article III, Section 18 of the Constitution. We find that none of these grounds support appellant's claim of unconstitutionality.

## I

The court of common pleas decided this case upon preliminary objections, and therefore we must treat as true all well-pleaded allegations made by Freezer Storage in its complaint as amended. *Allstate Insurance Co. v. Fioravanti*, 451 Pa. 108, 299 A.2d 585 (1973).

Freezer Storage alleges that appellee Armstrong Cork Company (Armstrong), negligently planned, designed and installed insulation material in the ceiling of Room No. 1 of a low-temperature warehouse owned and operated by Freezer Storage. About August, 1970, Freezer Storage discovered that the ceiling was about to collapse, and paid Acands, Inc. (Acands) over $21,000 for repairs.

On April 18, 1973, the ceiling collapsed. Repairs cost nearly $60,000 and damage to merchandise stored in the room was about $20,000. After the collapse, Freezer Storage discovered that both the original construction by Armstrong and the repairs by Acands had been done negligently.

In March of 1974, Freezer Storage brought an action for damages against both Armstrong and Acands in the Court of Common Pleas of Allegheny County. Armstrong filed preliminary objections to the complaint, contending that the Act of 1965 barred the action because it was instituted more than twelve years after Armstrong had completed work on the warehouse ceiling. Freezer Storage responded that the statute is unconstitutional. The trial court held the statute constitutional and dismissed the action against Armstrong.

The Superior Court affirmed. We granted allocator and now affirm.

## II

Article III, Section 32 of the Pennsylvania Constitution reads in pertinent part:

"The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law: . . .

7. Regulating labor, trade, mining or manufacturing: . . . ."

Appellant contends that the limitation of liability on which appellee relies, the Act of 1965, is a "special law" because it creates an irrational distinction between engineers, architects, builders and building contractors [hereinafter collectively called "builders"], to whom it applies, and others who are involved in improving real estate, such as landowners and suppliers, to whom it does not apply.

■ The general rule for determining whether an act is a "special law" violating the Pennsylvania Constitution is this:

"Legislation for a class distinguished from a general subject is not special, but general; and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification."

*DuFour v. Maize,* 358 Pa. 309, 313, 56 A.2d 675, 677 (1948), quoting from *Seabolt v. Commissioners,* 187 Pa. 318, 41 A. 22 (1898). Thus, our only inquiry is whether there are "real distinctions" between builders and landowners, and between builders and suppliers.

██ It is manifestly rational to adjust time periods for liability for acts performed according to the substantive scope of the liability involved. The scope of liability of the class of builders differs significantly from that of the class of owners. First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable. Landowners may be liable to others who come onto their land. Builders, however, may be liable both to the landowners and to others who use the land. Second, a builder may be liable for construction defects under various legal theories—contract, warranty, negligence, and perhaps strict liability in tort.[3] Landowner liability for such defects, on the other hand, typically lies only in tort, unless the landowner is a lessor, in which case he is liable only for events occurring while the tenant is in possession. See generally, Restatement (Second) of Property, Landlord & Tenant, Chapters 10 & 17–19 (1977). Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures and by regulating the number and type of persons entering the land and regulating the conditions of entry. The builder has no such control over his product after relinquishing it to the landowner. Landowner's liability is also controlled by the myriad of common law rules limiting liability to such classes as "undiscovered trespassers," "mere licensees" and so forth. Builder's insurance and owner's insurance structures and pricing are also different. For any of these reasons the Legislature might rationally conclude that builders should remain liable for their mistakes for only 12 years after they complete construction, but that a landowner should remain liable for injuries caused on his land for as long as he is in possession. See 12 P.S. § 65.1.

Appellant also suggests that this statute is invalid because it exempts builders but not suppliers from liability twelve years after a building is completed. As amicus points out, there are no cases on whether suppliers are ever to be classed as persons "lawfully performing . . . the de-

3. Compare Restatement (Second) of Torts § 385 (1965) with id. § 402A.

sign, planning . . . or construction of [improvements to real property]." However, assuming arguendo that suppliers are not within the class of builders, the distinction drawn between the two classes is rational. Suppliers, who typically produce items by the thousands, can easily maintain high quality-control standards in the controlled environment of the factory. A builder, on the other hand, can pre-test his designs and construction only in limited ways— actual use in the years following construction is their only real test. Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate plot of land; each lot may have slightly different soil conditions; one may be near an underground stream; and so forth. The Legislature can rationally conclude that the conditions under which builders work are sufficiently difficult that limitations should be placed on their liabilities, but not on the liabilities of suppliers.

This Act of 1965 draws the sort of rational distinction, based on real differences in the business world, which our cases have consistently upheld. In *Goodman v. Kennedy*, 459 Pa. 313, 329 A.2d 224 (1974), this Court sustained a statute allowing retail food stores employing fewer than ten people to open on Sunday, while forcing other food stores to remain closed. We held that this distinction was rationally related to the statutory purpose of guaranteeing a day of rest for most workers, while allowing necessaries to be available to the public. However, we struck down and severed another exemption for stores where fresh meat, produce, and groceries were sold by the store's proprietor or his immediate family. We held that this gave business benefits to certain individuals solely on the basis of family status. We did not see that this distinction had any basis in the business situation to which the statute applied.

In *DuFour v. Maize*, 358 Pa. 309, 56 A.2d 675 (1948), we upheld an act requiring operators of bituminous open-pit coal mines to implement certain conservation measures not required of other miners. We held the Legislature could

rationally conclude that this form of mining posed environmental problems different from those posed by other forms of mining. In *Tosto v. Pennsylvania Nursing Home Loan Agency,* 460 Pa. 1, 331 A.2d 198 (1975), we held that an act allowing a state agency to make loans only to those nursing homes which met certain safety and other standards was rationally related to encouraging nursing homes to meet these standards, and so to promoting a condition in the business world which it was manifestly proper for the state to promote. Finally, in *Commonwealth v. Life Assurance Co.,* 419 Pa. 370, 214 A.2d 209 (1965), appeal dismissed, 384 U.S. 268, 86 S.Ct. 1476, 16 L.Ed.2d 524 (1966), we upheld, under what is now Pa.Const. art. VIII, § 1 (uniformity of taxation), a tax imposed upon domestic life insurance companies that was different from the tax upon domestic casualty insurance companies. We held that the tax differential was based upon the different natures of life and casualty insurances, and that the distinction that was drawn was therefore rational.

In contrast, in *Commonwealth v. Casey,* 231 Pa. 170, 80 A. 78 (1911), we struck down a law establishing a forty hour week for "mechanics, workingmen and laborers" employed by the state, municipalities or public works contractors, but not for laborers employed by private enterprise. This Court held that the distinction this statute drew between publicly and privately employed workers had no relationship whatever to the type of work the employees performed and therefore no relationship to the statutory aim of easing the burden of the workingman. That is, the statute did not draw upon real distinctions in the relevant business environment, the conditions in which the worker labors, but upon the artificial grounds of the identity of the employer.

The 12-year limitation on builder's liability, whether wise or not, rests on real distinctions which exist in the world in which builders, suppliers, and landowners operate. We have no further discretion to review the legislative judgment and must therefore uphold this statute against the assertion that it violates Pa.Const. art. III, § 32.

### III

Appellant further asserts that the statute violates Article I, Section 11 of the Pennsylvania Constitution which reads in pertinent part:

"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. . . ."

Appellant argues that this provision prohibits the Legislature from abolishing a right of action existing at common law without substituting some other means for redress.[4] We disagree.

We have in the past upheld against an Article I, Section 11 challenge a statute which abolished a common law cause of action without providing a substitute. In *Sherwood v. Elgart*, 383 Pa. 110, 117 A.2d 899 (1955), a statute which excuses innkeepers from liability to guests for certain losses for which they would have been liable at common law was challenged because it destroyed a common law cause of action without providing a substitute. We rejected this contention.

In interpreting this constitutional provision, we should remember that no one "has a vested right in the continued existence of an immutable body of negligence law . . . . [T]he practical result of a [contrary] conclusion would be the

---

4. In the context of a similar statute, the Kentucky courts have accepted appellant's argument on the basis of constitutional provisions similar to Pa.Const. art. I, § 11 & art. III, § 18. *Saylor v. Hall*, 497 S.W.2d 218 (Ky.1973). However, appellant's argument has been rejected in Oregon, *Josephs v. Burns*, 260 Or. 493, 491 P.2d 203 (1971) (constitutional provision similar to Pa.Const. art. I, § 11), and New Jersey, *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972) (provisions worded differently from Pa.Const. art. I, § 11, but with history of similar interpretation). The history of the interpretation of the Kentucky Constitution is sufficiently different from our history that we consider *Saylor* inapposite, however correct it may be in terms of Kentucky Law.

It should also be noted that appellant makes no claim that this statute deprives him of a cause of action which had already accrued to him before the statute became effective, see *Misitis v. Steel City Piping Co.*, 441 Pa. 339, 272 A.2d 883 (1971).

stagnation of the law in the face of changing societal conditions." *Singer v. Sheppard,* 464 Pa. 387, 399, 346 A.2d 897, 903 (1975) (upholding statute which substituted mandatory "no fault" auto insurance for certain causes of action in tort). Indeed we have long explicitly recognized that societal conditions occasionally require the law to change in a way that denies a plaintiff a cause of action available in an earlier day:

> "[W]hat today is a trespass, may, by development of law, not be so tomorrow. Therefore it will not do to say . ., since, once upon a time, at common law, [an event] would have been a tort, giving rise to a claim for damages, that at the present day such an act has all the attributes of a common-law trespass . . . ."

*Jackman v. Rosenbaum Co.,* 263 Pa. 158, 175, 106 A. 238, 244 (1919), aff'd, 260 U.S. 22, 43 S.Ct. 9, 67 L.Ed. 107 (1922) (upholding the power of both the Legislature and the courts to modify remedies available to landowners involved in party-wall disputes). In *Fadgen v. Lenkner,* 469 Pa. 272, 365 A.2d 147 (1976), we abolished the time-honored cause of action for criminal conversation, without explicit mention of this constitutional provision.

The rule abrogated by the statute in *Sherwood* was an old established fixture of the common law. See generally, W. Prosser, Torts § 81, at 539 & note 25 (4th ed. 1971). The liability of builders for harms occurring after transferring their products to their customers was long uncertain, and it is only recently that the "common law" has fully recognized this right of action against builders. See generally id. § 104, at 680–81 & nn. 87, 88, citing *Curtain v. Somerset,* 140 Pa. 70, 21 A. 244 (1891) (hotel patron injured in collapse of negligently constructed building could not recover from builder because collapse occurred after owner took possession). If in *Sherwood* the Legislature could redefine the long-established rights of hotel guests and operators, we should no less allow the Legislature to redefine the rights of builders, their customers and third parties, where those rights are not settled, but rather are in a period of growth and change.

This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law.

Appellant cites *Dolan v. Linton's Lunch,* 397 Pa. 114, 123, 152 A.2d 887, 892 (1959), for the proposition that abolishing a cause of action without substituting another "might well violate the mandate of Article I, Section 11." The quoted language was dictum in that case, used to support a decision limiting the pre-emptive effect of the Workmen's Compensation Law to those cases under which that statute actually supplies a remedy. The case before us has no effect on the holding in *Dolan.* To the extent that the dictum therein suggests that the Legislature may never abolish a judicially recognized cause of action, we decline to follow it.

We therefore cannot conclude that the Act of 1965 violates Article I, Section 11 of the Constitution of Pennsylvania.

## IV

Finally, appellant argues that this statute limits the amount which may be collected for an injury, in violation of Article III, Section 18 of the Constitution:

".   .   . in no   .   . cases [except Workmen's Compensation] shall the General Assembly limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, and in case of death from such injuries, the right of action shall survive, and the General Assembly shall prescribe for whose benefit such actions shall be prosecuted.   .   ."

The Legislature has not limited the recovery available under a cause of action, but eliminated that cause of action

altogether in certain cases. It is senseless to hold that, although Article I, Section 11 permits the Legislature to abolish a cause of action, any such abolition is nonetheless void because it constitutes a diminution of recovery for a harm inflicted in violation of Article III, Section 18: "While, under this constitutional provision, no valid statutory limitations may be placed upon claims for injuries recoverable at law, yet it does not have, and cannot properly be given, the effect of conferring a right of recovery where none otherwise exists." *Jackman v. Rosenbaum,* 263 Pa. at 169, 106 A. at 242. In both *Jackman* and the present case, the chief reason that no cause of action otherwise existed was that the Legislature had passed a statute abolishing plaintiff's purported cause of action.[5]

The order of the Superior Court is affirmed.

JONES, Former C. J., did not participate in the decision of this case.

MANDERINO, J., filed a dissenting opinion in which NIX, J., joins.

MANDERINO, Justice, dissenting.

I dissent. The Act before us constitutes a violation of the prohibition against special legislation of Article III, section 32 of the Pennsylvania Constitution.

The majority opinion goes to great lengths to establish that there are "real distinctions" between those covered by the Act of 1965 and those who are not so covered. Real distinctions can be outlined as to many classifications. There is a real distinction between Protestants and Catholics, between the rich and the poor and between the short and the tall. These real distinctions, however, are not

---

**5.** Dicta in *Thirteenth and Fifteenth Street Passenger Railway v. Boudrou,* 92 Pa. 475, 482 (1880) (invalidating statute limiting recovery to $3000), and *Dolan v. Linton's Lunch,* 397 Pa. at 123, 152 A.2d at 892–93 that abolition of a cause of action might be a per se violation of this constitutional provision are unpersuasive. We might only note that today's decision is in no way inconsistent with these cases or the heart of their reasoning.

sufficient to give one class a privilege which is denied to others. The test must be whether, granting that real distinctions exist, those distinctions provide a valid basis for discriminatory treatment. I cannot agree that the discrimination of the Act of 1965 is constitutional.

The Act of 1965 is similar in many respects to legislation existing in some thirty jurisdictions designed to limit the time in which an action may be brought against those involved in the design, planning, and construction of improvements to real property. See, *Comment—Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action,* 18 Cath.U.L.Rev. 361 (1969). Such legislation has survived constitutional challenge in some of these jurisdictions; see for example, *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972); *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); and succumbed on various grounds in others; see for example, *Skinner v. Anderson,* 38 Ill.2d 455 (1967); *Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568 (1973).

Article III, section 32 reads in relevant part as follows: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law.

In *DuFour v. Maize,* 358 Pa. 309, 313, 56 A.2d 675, 677 (1948), we stated the general rule in connection with Art. III, section 32 (then Art. III, section 7), as follows (quoting from *Seabolt v. Commissioners,* 187 Pa. 318, 41 A. 22 (1898)):

"Legislation for a class, distinguished from a general subject is not special, but general; and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones, used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not con-

sider it to be on a sound basis. The test is not wisdom, but good faith in the classification."

The legislative history indicates that the purpose of the Act of 1965 is to protect architects, engineers, and contractors "from accusations of professional failure long after [an] engagement is complete." The twelve year period was chosen because "after this period of time, it becomes exceedingly difficult, if not impossible, to provide a proper and complete defense against allegations which may be brought against him." Legislative Journal-House, pp. 2343–44 (Remarks of Rep. Membus). Given this purpose, however, the Act violates Art. III, sec. 32 because it distinguishes between architects, engineers, and contractors on the one hand, and other persons such as owners, manufacturers, distributors, suppliers, and sellers, who are similarly situated, on the other. The statutory purpose of providing protection against claims long after the completion of construction rationally applies to the second category who make improvements to real estate as well as the first. Yet, those in the second category are not included within the class protected by the statute. A statute may not arbitrarily limit a class.

Armstrong suggests no reason for so excluding any persons other than owners. Armstrong asserts that owners, at least, are rationally excluded in order to encourage them to supervise and maintain their premises. Typically, however, when twelve years have elapsed after completion of an improvement, the owner is in no better position to defend against a lawsuit than one making the improvement since the owner, who has a real interest in doing so, nevertheless discovered no problems for twelve years. In short, owners as well as those making improvements have the same need of the benefits of the Act of 1965. There is thus no reasonable relationship between the legislative classification and the legislative purpose.

This position was adopted by the Illinois Supreme Court in *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967). *Skinner* held a similar statute unconstitutional in violation of a comparable provision of the Illinois constitution:

"The effect of section 29 of the Limitations Act is to grant to architects and contractors a special or exclusive immunity. To justify it the defendant asserts that its 'purpose is to require the necessary litigation to be brought within a time when the circumstances can still be proven, when investigation is still possible, when facts are still assessable, when proofs are not lost, when memories are still fresh. In short, when a trial can still result in fair outcome for both parties.' And he also argues that 'statutes are not unconstitutional as denying equal protection of the law merely because they affect one class and not another provided they affect all members of the same class alike.'

If, as the defendant suggests, the objective of the statute is to require that trials of actions based upon defects in construction be held within a relatively short time after the work is completed, that objective is achieved only partially, and in a discriminatory fashion. If the damage or injury occurs at any time within four years after construction is completed, the time within which the action must be commenced is governed by other statutory limitations. In such cases the time between completion of construction and the required institution of suit may well exceed four years.

More important is the fact that of all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed."

Armstrong contends that *Skinner* is inapposite because the statute held invalid there barred actions brought more than four years after the completion of construction whereas the Act of 1965 specified a twelve year period. This argument misperceives the issue. We are not passing on the legitimacy of the length of the statutory period, but rather on the legislative classification itself. The lack of a rational basis for the classification itself results in the constitutional infirmity.

The Supreme Court of Hawaii recently came to the same conclusion as to the arbitrary and capricious nature of the legislative classification in *Fujioka v. Kam,* 55 Haw. 7, 514 P.2d 568 (1973). In discussing a statute similar to ours, the Hawaii Supreme Court said:

"Stated another way, the cause of the injuries is the same, the plaintiff is the same and the injuries are the same—but under the statute the plaintiff may not recover from the engineer and the contractor even though the negligence of the engineer and the contractor may have been the sole proximate cause of the injuries suffered by the plaintiff. However, the plaintiff may recover damages from the owners, and the owners will have no right to have the engineer and the contractor reimburse or contribute to them the amount of damages they are

required to pay the plaintiff. We are unable to see any rational basis for treating the engineer and the contractor differently from the owners under the same circumstances.

It is clear that the classification does not rest upon some reasonable consideration of differences (between the classes under the same circumstances), which have a fair and substantial relation to the object of the legislation. Nor is the classification founded upon a reasonable distinction or difference necessitated by state policy. A statute making such an unsupportable classification fails to meet the requirements of the equal protection guaranty."

Armstrong argues further that the issue before us has previously arisen in the Supreme Courts of New Jersey, Washington, and Arkansas, all of which have specifically rejected the approach we follow. See *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); *Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972); and *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970). It is true the New Jersey Supreme Court, in *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972), stated that the favored class under the New Jersey statute there held valid was larger than architects, engineers, and building contractors and hence was neither special legislation nor violative of equal protection. The Act of 1965, too, seems to speak as broadly as the New Jersey statute. Nevertheless, as a practical matter, the statute primarily protects architects, engineers, and contractors, those in the business of making improvements to real estate. As reflected in the legislative history of this statute, they are the intended and actual beneficiaries. Furthermore, none of the cases cited by Armstrong, including Rosenberg, persuasively suggests any rational basis for distinguishing between architects, engineers, and contractors, on the one hand, and owners, manufacturers, distributors, suppliers and sellers on the other.

The unconstitutional portions of the Act of 1965 are not capable of separation from the rest of the statute, Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1925, *State Board of Chiropractic Examiners v. Life Fellowship of Pa.,* 441 Pa. 293, 272 A.2d 478 (1971). Accordingly, the entire Act is invalid. We should reverse the order of the Superior Court affirming the order of the Court of Common Pleas of Allegheny County.

NIX, J., joins in this dissenting opinion.