436 A.2d 1182

**Daniel E. BRANCHICK, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, and C. J. Lieberth, Appellees.**

Supreme Court of Pennsylvania.

Argued May 18, 1981.

Decided Nov. 6, 1981.

Gregory M. Kerwin, Harrisburg, for appellant.

Richard L. Cole, Jr., Asst. Atty. Gen., for appellees.

Before ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

On February 14, 1980, the appellant, Daniel E. Branchick, filed a complaint in mandamus alleging that he had been wrongfully discharged from his position of employment in the Commonwealth's Department of Labor and Industry.

Commonwealth Court treated the complaint as a petition for review,[1] and, following an evidentiary hearing, dismissed the petition.[2] The instant appeal ensued.[2a]

■ Appellant was first employed by the Commonwealth in 1971 as a supervisor for the State Tax Equalization Board, and, in 1975, was promoted to the position of Administrative Officer III in the Department of Labor and Industry's Division of Prevailing Wage. In January of 1979, Governor Thornburgh assumed office; subsequently, Myron L. Joseph was appointed Secretary of the Department of Labor and Industry. Secretary Joseph, via the following letter dated April 11, 1979, provided notice that appellant's employment would be terminated:

Dear Mr. Branchick:

This is to advise you that in the course of my continuing review of key personnel and operations in the Department, I find that I am unable to retain you beyond close of business April 24, 1979.

Concerning your group life policy, Blue Cross/Blue Shield coverage, your earned unused annual leave and other matters, please contact the Personnel Office regarding your benefit rights.

I want you to know that I appreciate your past service to this department and you have my best wishes for success in all future endeavors.

Sincerely,

Myron L. Joseph

Appellant had received excellent performance ratings prior to his dismissal; hence, upon receipt of the unexpected termination notice, he attempted, albeit unsuccessfully, to

1. See P.R.A.P. 1502.

2. *Branchick v. Commonwealth of Pennsylvania, Department of Labor and Industry*, No. 314 C.D. 1980 (Pa.Commw.Ct. filed January 21, 1981).

2a. This case was reassigned to this author on September 19, 1981.

obtain from Secretary Joseph a further explanation for the dismissal.[3]

■ In 1980, appellant instituted an action in Commonwealth Court seeking reinstatement and restoration of back pay. Asserted as the basis for his claim was the allegation that the dismissal was politically motivated, because appellant is a Democrat and Governor Thornburgh is a Republican. The Supreme Court of the United States has declared as unconstitutional the dismissal of nonpolicymaking government employees solely because of partisan political affiliation. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). *See also Laskaris v. Thornburgh*, 661 F.2d 23, (3rd Cir. 1981). Presently, appellees do not allege that appellant occupied a policymaking role such that political affiliation with the "in-party" would appropriately be a condition of employment. See *Branti v. Finkel*, supra. Rather, the issue on appeal is whether the Commonwealth Court's finding that the dismissal in question was not politically motivated should be sustained. The scope of our review is well-settled; the determination of whether or not mandamus lies in a given case is within the discretion of the trial court, and, absent an abuse of discretion, its decision should not be disturbed on appeal. *Coleman v. Board of Education of the School District of Philadelphia*, 477 Pa. 414, 383 A.2d 1275 (1978). After a thorough review of the record, we find the decision of the Commonwealth Court to have been amply supported by the evidence.

■ Patronage dismissals violate the interdictions of the First Amendment only when they are effected "solely" because of employees' political affiliations. *Elrod v. Burns*, 427 U.S. at 350, 96 S.Ct. at 2678; *Branti v. Finkel*, 445 U.S. at 517, 100 S.Ct. at 1294. The United States Supreme Court has never addressed the issue of burden of proof in the

**3.** We find no merit in appellant's contention that he was entitled to a hearing prior to dismissal, for there is asserted no contractual or statutory provision suggesting that he was other than an employee-at-will.

specific context of cases where government employees claim to have been fired "solely" on account of their political affiliations. See *Elrod v. Burns*, supra; *Branti v. Finkel*, supra. However, because this case presents a dispute as to whether employment was terminated for conduct protected by the First Amendment, the burden of proof issue is analogous to that decided by the Supreme Court in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and subsequently reaffirmed in *Givhan v. Western Line Consol. School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). *Accord Nekolny v. Painter*, 653 F.2d 1164 (7th Cir. 1981). In *Mount Healthy*, an untenured school teacher alleged that the school board's decision not to rehire him was retribution for his having made certain constitutionally protected communications. The Supreme Court of the United States set forth the proper allocation of the burden of proof as follows:

> *Initially, in this case, the burden was properly placed upon respondent to show that his conduct* was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it *was a "motivating factor" in the Board's decision not to rehire him.* Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board has shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

429 U.S. at 287, 97 S.Ct. at 576. (Emphasis added.)

■ The *Mount Healthy* rule, applied to the instant case, imposes upon the employee the *threshold* burden of proving that his political affiliation was a "motivating factor" in effecting his dismissal. The burden must be affirmatively met, however, and is not to be merely *presumed* satisfied by the bare fact that the terminated employee held membership in a defeated political party. In the court below, appellant's

proffered testimony indicated that he was a politically active member of the Democratic Party, maintained a meritorious performance record in the position of employment from which he was discharged, and lost his job after Governor Thornburgh, a Republican, assumed office. In addition, appellant's immediate supervisor and certain other Department of Labor and Industry officials subordinate to Secretary Joseph testified that they were not, at the time of appellant's dismissal, aware of a high-level personnel review that appellees assert culminated in the dismissal. Such a showing, alone, falls considerably short of that necessary to prove that political affiliation was a "motivating factor" in the dismissal.

It has been suggested that it would be naive to think that dismissals following an election could, in the usual case, be other than patronage-related, based solely on political affiliation. Acceptance of such a suggestion would, as a corollary, require that a terminated employee's threshold burden of proof, under *Mount Healthy*, supra, be regarded as satisfied merely upon a showing that the employee was not a member of the "in-party". Such an approach presents a substantial danger to the efficiency of government, and constitutes an impediment to the implementation of the voters' mandates. When public officials are elected to invoke policies promoting governmental efficiency, they must not be shackled to a system that unnecessarily inhibits actions deemed necessary to meet efficient administrative and budgetary requirements. The *Mount Healthy* allocation of burden of proof adequately protects the First Amendment interests of employees. Yet, unless the threshold burden set forth in *Mount Healthy* is *strictly* met by terminated employees, successful political candidates will repeatedly be subjected to the needless and undesirable burden of proving the propriety of wholly responsible and legitimate reductions in governmental employment. Furthermore, a lax application of the threshold requirement would result in governmental employees enjoying a certain degree of immu-

nity to dismissal *solely* by reason of their *not* being members of the "in-party".

■ An ample basis appears in the record to sustain the lower court's determination that appellant's allegation of a political dismissal rested merely on "his own belief, with nothing more to support it beyond the fact that the present administration is Republican and he is Democratic." Indeed, appellant made no attempt to prove more than his own belief, leaving entirely to unsupported inference the threshold burden of proving motivation for his dismissal. The facts that an employee with a good performance record is discharged, and that supervisors not alleged by appellees to have participated in the review culminating in the dismissal were unaware of the review being conducted, do not create an inference of a tainted motive for the administration's actions. Certainly, a multitude of reasons may exist for employment terminations. Here, appellant has failed to establish that political animus was, to any extent, a motivating factor in his dismissal. No evidence was introduced of wholesale dismissals of "out-party" members by the incoming administration; of statistics indicating employment retention or replacement policies were based on political affiliation as opposed to merit selection; of appellant's having been replaced by a less qualified affiliate of the incoming administration; of inquiries by that administration into the political alliances of employees; of statements of political animus by the employer indicating membership in the "in-party" to be a prerequisite to retention or hiring; or of any other form of evidence bearing on motivation. Our decision, therefore, affirming the Commonwealth Court's dismissal of the petition in question, rests solely upon appellant's failure to meet the *threshold* burden of proof established by *Mount Healthy*, supra.

■ We note, however, that even if the threshold burden were regarded as satisfied, so as to shift to the appellees the burden of showing by a preponderance of the evidence that the same result would have been reached as to the dismissal

even in the absence of the protected conduct (party affilia-
tion), sufficient evidence was introduced to that effect in the
court below. Evidence adduced on behalf of the appellees
included testimony of former Secretary Joseph, who is a
member of the Democratic Party, and of the Deputy Secre-
tary for Administration in the Department of Labor and
Industry, setting forth numerous apolitical reasons for the
employment termination. These included the consideration
that appellant and his supervisor both had the same job
classification, resulting in an unusual lack of subservience in
the organizational structure and creating a surplus of super-
visory personnel for a bureau as small as the Division of
Prevailing Wage. In addition, there was testimony that
appellant's job was one of forty positions eliminated pursu-
ant to an administrative and budgetary review conducted by
the Secretary and Deputy Secretary in compliance with
instructions from the Office of Budget Administration. Sig-
nificantly, appellant's position was never refilled; hence,
there is not even an allegation that cronyism guided the
selection of a replacement.

We reject the suggestion that, in proving the reason for a
dismissal, the employer should be permitted to meet his
burden *only* by offering contemporaneous written documen-
tation of the decision process, as opposed to supplying testi-
mony of those involved in the process. Aside from expand-
ing the morass of bureaucratic paperwork, such a require-
ment of documentation would reflect the unjustified pre-
sumption that, in the usual case, a dismissal is naturally
attributable to an illegitimate motive. Further, it presup-
poses that administration officials will prevaricate to estab-
lish an *ex post facto* apolitical rationale for their action.
The lower court's determination that the dismissal in ques-
tion was motivated by a review of personnel and budgetary
requirements was, therefore, quite amply supported by com-
petent evidence.

Order of Commonwealth Court affirmed.

NIX, J., files a dissenting opinion.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or decision of this case.

NIX, Justice, dissenting.

The questionable reasoning employed by the majority to reach its result reflects a reluctance to accept the view that the State's use of a patronage system in the management of its affairs has First Amendment implications. In the instant case the record does not reveal any dereliction of the employee that could have been the basis for the order of dismissal. To the contrary, the notice of dismissal recognized and commended appellant for his faithful service.[1] Nevertheless, the majority sustains the dismissal because appellant has failed to establish that he was without fault. In so doing, the fundamental evidentiary principle that one cannot fairly be required to prove a negative has been ignored. *See Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968); 9 Wigmore, *Evidence*, § 2468 (1940). By placing such an impossible burden of proof as a condition to relief, it renders illusory a principle it purports to recognize. My sympathies are with the result reached, but a faithful adherence to the pronouncements of *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) requires a contrary result.

My personal views are reflected by Justice Powell:

1. Dear Mr. Branchick:
   This is to advise you that in the course of my continuing review of key personnel and operations in the Department, I find that I am unable to retain you beyond close of business April 24, 1979.
   Concerning your group life policy, Blue Cross/Blue Shield coverage, your earned unused annual leave and other matters, please contact the Personnel Office regarding your benefit rights.
   I want you to know that I appreciate your past service to this department and you have my best wishes for success in all future endeavors.
   Sincerely,
   Myron L. Joseph

History and long-prevailing practice across the country support the view that patronage hiring practices make a sufficiently substantial contribution to the practical functioning of our democratic system to support their relatively modest intrusion on First Amendment interests. The judgment today unnecessarily constitutionalizes another element of American life—an element certainly not without its faults but one which generations have accepted on balance as having merit. We should have heeded, instead, the admonition of Mr. Justice Holmes that "[i]f a thing has been practised for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it. . ." *Jackman v. Rosenbaum Co.,* 260 U.S. 22, 31, 43 S.Ct. 9, [10] 67 L.Ed. 107 (1922); see *Walz v. Tax Commission,* 397 U.S. 664, 678, 90 S.Ct. 1409, [1416] 25 L.Ed.2d 697 (1970).

*Elrod v. Burns, supra,* 427 U.S. 388–89, 96 S.Ct. 2696–97 (1976) (Powell, J. dissenting, joined by Burger, C. J. and Rehnquist, J.)

An employment at will has unnecessarily been given constitutional protections. Tenure laws and civil service protection provide the necessary continuity in public employment. I am satisfied that reasonable patronage practices preserve the democratic process and do not erode the efficiency of government. The development of patronage practices contributed to the desired demise of an aristocracy's domination over political affairs. The erosion of that practice would reestablish the former aristocracy.

Nevertheless, the supremacy clause requires that we adhere to the Supreme Court's interpretation of the Constitution. *Commonwealth v. Ware,* 446 Pa. 52, 284 A.2d 700, *cert. denied,* 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1971); *Commonwealth ex rel. Banks v. Hendrick,* 430 Pa. 575, 243 A.2d 438 (1968); *Commonwealth v. Robin,* 421 Pa. 70, 218 A.2d 546 (1966). If we faithfully follow the precepts in *Elrod* and *Branti,* we have no recourse in this case but to grant the requested relief.